DICKINSON, Presiding Justice,
for the Court:
¶ 1. The trial judge erroneously denied the accused a peremptory strike by holding that a juror’s previous service on a jury in a criminal case was not a race-neutral reason for the strike. During voir dire, the juror had expressed regret that the jury was unable to reach a verdict. We reverse and remand for a new trial.
FACTUAL AND PROCEDURAL BACKGROUND
¶ 2. When, at the beginning of Merlin Hardison’s armed-robbery trial, his counsel exercised a peremptory strike on a juror, the State raised a Batson[1] challenge. The trial judge required Hardi-son’s counsel to provide a race-neutral reason for the strike. Hardison’s counsel responded that, during voir dire, the juror had expressed regret that a previous jury on which he had served in a criminal case had failed to reach a verdict. The trial judge held this was not a valid race-neutral reason and denied Hardison the peremptory strike.
¶ 3. A jury convicted Hardison, and he appealed, raising nine issues. However, we find the trial judge’s denial of Hardi-son’s peremptory strike to be dispositive. We also shall address Hardison’s claim that he was denied his right to a speedy trial.
ANALYSIS
¶ 4. Were Hardison to prevail on the speedy-trial issue, we would dismiss this case. Therefore, we address that issue first.
I. Hardison’s right to a speedy trial was not violated.
¶ 5. Hardison was indicted on February 10, 2004, arrested on March 2, 2005, and brought to trial on May 22, 2006. Because a total of 833 days passed between the indictment and trial, Hardison claims the delay violated his Sixth Amendment right to a speedy trial. But Hardi-son failed to make this objection at the trial in circuit court, and we remanded the issue to the circuit court for a hearing on the matter. As ordered, the circuit court held a hearing for the limited purpose of allowing the State an opportunity to show reason for the delay and to overcome the presumption that Hardison was prejudiced by the twenty-seven-month delay. Based on the circuit judge’s findings of fact and conclusions of law, we now hold that there was no violation of Hardison’s constitutional right to a speedy trial.
¶ 6. The Sixth Amendment of the United States Constitution provides that “in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial....”[2] And when a defendant claims *1096 the State did not provide a speedy trial, we analyze the claim using the following four factors announced in Barker v. Wingo: “Length of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant.”[3]
¶ 7. In weighing the Barker factors, we look at “the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of non-persuasion. In the end, no one factor is dispositive. The totality of the circumstances must be considered.”[4]

A. Length of Delay

¶ 8. It is well-settled that “[t]he Sixth Amendment clock begins to tick upon indictment when no prior arrest on the alleged offense is involved.”[5] And this Court has held that an eight-month delay is presumptively prejudicial.[6] Because the delay in bringing Hardison to trial was more than three times the presumptively prejudicial eight-month mark, this factor clearly weighs against the State, thus triggering an examination of the remaining Barker factors.

B. Defendant’s Assertion of His Rights

¶ 9. The second Barker factor is whether or not the defendant asserted his Sixth Amendment right in the trial court.[7] But we have long recognized that a defendant “has no duty to bring himself to trial.”[8] That statement would have no meaning at all if defendants who fail to demand a speedy trial nevertheless have “Barker points” taken away. So while a defendant is awarded points for asserting his right, the failure to demand a speedy trial does not count against Hardison. Instead, as here, the factor favors neither the defendant nor the State — it remains neutral.

C. Reason for Delay

¶ 10. After the alleged crime, Hardison fled to California — where he remained for almost a year following the indictment. This time — 385 days — is attributable to Hardison. Hardison eventually was arrested on March 2, 2005, and trial was set for May 9, 2005. But it was not until May 22, 2006, that Hardison was actually brought to trial. Between his arrest and trial, a total of 445 days elapsed. Of this delay, 316 days resulted from continuances sought by Hardison himself. This time is attributable to Hardison as well. So, of the 833 total days between indictment and trial, 701 days are attributable to Hardi-son.

D. Prejudice to the Defendant

¶ 11. An eight-month delay is presumptively prejudicial, and the delay here was more than three times that amount.[9] But because a majority of that delay — 701 of *1097 833 days — is attributable to Hardison, the State has overcome the presumption of prejudice in this case.

E. Balancing the Barker Factors

¶ 12. Not a single Barker factor weighs in Hardison’s favor, and one — reason for the delay — weighs heavily against him. Therefore, we hold that Hardison was not denied his Sixth Amendment right to a speedy trial.
¶ 13. After finding no Sixth Amendment violation, we move to Hardison’s other claims. And because we find the denial of Hardison’s peremptory challenge without a proper Batson analysis constituted reversible error, we reverse and remand for a new trial without addressing the remaining issues.
II. The trial court erroneously denied Hardison’s right to a peremptory strike.
¶ 14. Hardison argues that the trial court denied his constitutional right to a jury of his peers when it sustained the State’s objections to his peremptory challenges. Hardison’s specific argument for this issue, however, is that the trial court erred by not requiring the State to make a prima facie showing of racial discrimination and by sustaining the State’s Batson[10] challenge.
¶ 15. During jury selection, and after Hardison’s counsel struck four white veniremembers, the State made a Batson challenge. Hardison’s counsel argued that the State did not present a prima facie case of discrimination, because the defense struck both African-American and white veniremembers. The State rebutted, arguing that defense counsel struck highly educated older persons, many of whom had served on juries in the past. Ultimately, the trial judge found that the State had raised a prima facie case of discrimination and required Hardison to present race-neutral reasons for striking four white veniremembers: James Gray, Donald Wilder, Johnny Ramia, and John Danahue.
¶ 16. As required, Hardison’s counsel gave reasons for striking those four witnesses. The trial judge agreed with defense counsel’s race-neutral reasons for all but one of the strikes (James Gray). During voir dire, Gray said that he had served on a jury in an armed-robbery case and that the jury did not reach a verdict because of prosecutorial error. Hardison’s counsel argued that this response suggested to him that Gray regretted not being able to reach a verdict, so he was more likely to convict. Hardison’s counsel pointed out that the defense was not trying to strike Gray for cause, and that the reason was race-neutral. The trial judge, however, found the reason insufficient, denied Hardison the peremptory challenge, and restored Gray to the jury pool.
¶ 17. In Batson v. Kentucky, the United States Supreme Court held that the prosecution may not use peremptory strikes in a discriminatory manner.[11] This Court has said that the Batson analysis applies to both prosecutors and defendants.[12] And when the Batson analysis is used against the defense, this Court has referred to it as a reverse-Batson challenge.[13] We analyze a Batson challenge using a three-part test:
*1098 First, the party objecting to the peremptory strike of a potential juror must make a prima facie showing that race was the criterion for the strike. Second, upon such a showing, the burden shifts to the State to articulate a race-neutral reason for excluding that particular juror. Finally, after a race-neutral explanation has been offered by the prosecution, the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory strike, i.e., that the reason given was a pretext for discrimination.[14]

A. Prima facie showing

¶ 18. To establish a prima facie case, the opponent of a peremptory strike must establish that (1) the opponent is a member of a cognizable class, such as a racial group; (2) the proponent has used peremptory strikes to remove venire-members in that class; and (3) the facts and circumstances give rise to an inference that the proponent used peremptory strikes to purposefully remove individuals of that class.[15] In Powers v. Ohio, the Supreme Court modified that test.[16] Under Powers, a defendant has standing to challenge the exclusion of a juror even if that juror is not of the defendant’s race.[17] The critical inquiry, then, is whether “the opponent has met the burden of showing that the proponent has engaged in a pattern or practice of strikes based on race or gender.”[18]
¶ 19. Based on this Court’s highly deferential standard, we cannot say that the trial court erred by finding a prima facie case of racial discrimination. Again, the record does not show the racial makeup of the venire, so we cannot determine how the defendant’s strikes compared to the overall composition of the venire. And, as this Court stated in Birkhead v. State, “[w]e cannot override the trial court when this Court does not even know the racial makeup of the venire or the jury.”[19] Although we know from the record that the final jury comprised six blacks and six whites, we cannot reverse the trial judge’s decision without knowing the racial makeup of the venire from which the jury was chosen. Thus, we move on to the second (race-neutral) and third (pretext) parts of the Batson analysis.

B. Race-neutral reasons, pretext

¶ 20. When reviewing a Batson challenge, we will not overrule a trial judge’s decision “ ‘unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence.’ ”[20] Here, the judge allowed three of Hardison’s four peremptory strikes against white veniremembers, but found that Hardison did not present a sufficient race-neutral reason for striking Gray. At voir dire, the State had the following exchange with Gray:
Q: You have been on a criminal jury before?
A: A long, long time ago.
*1099 Q: Do you remember what kind of case ' it was?
A: It was — I think it was an armed robbery case. It’s been so long ago since I was on the jury.
Q: Was that in Hinds County?
A: ' It was. It was right here.
Q: And do you remember if y’all were able to reach a verdict?
A: I think that the D.A.’s office failed to do something and the judge threw the case out.
Q: Okay. So y’all didn’t even get to that point.
A: Unh-unh.
Q: Okay. So that was so long ago neither Gregg [nor] I[was] involved with that; right?
A: No.
¶ 21. After the State finished its voir dire, Hardison’s counsel followed up:
Q: I believe you said you had been on a criminal jury?
A: Yes, sir.
Q: Did you reach a verdict?
A: No. And I can tell you who prosecuted that because I remember his name now. For the D.A., it was Tom Royals, and he failed to do something. I can’t remember exactly what he failed to do, but the judge dismissed the case.
Q: I believe you said that when you were asked earlier.
A: I didn’t say Mr. Royals’ name, but I just happened to remember who it was.
¶ 22. Hardison’s counsel claimed that Gray’s responses indicated he was propro-secution and that he regretted not being able to reach a verdict the last time he was a juror. The trial judge found that this reason was not a “proper or sufficient race-neutral” reason and placed Gray on the jury. This decision was clear error.
¶ 28. In Davis v. State, we listed sufficient race-neutral reasons for striking ve-nire members: “age, demeanor, marital status, single with children, prosecutor distrusted juror, educational background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in community, posture and demeanor indicated juror was hostile to being in court, juror was late, short term employment.”[21] Hardison’s reason — that Gray’s responses about a pri- or jury experience indicated he might be proprosecution — certainly qualifies as race-neutral. If a prosecutor’s distrust of a venire member is a race-neutral reason, then a defendant’s distrust must be as well. It is important to point out here that the trial judge never addressed the issue of pretext; he simply held that the stated reason was not race-neutral.
¶24. In finding the reason was not race-neutral, the trial judge did not proceed to the third part of the Batson analysis — pretext. Because of this, the judge never looked at how this particular strike compared to others, that is, whether the defense had accepted black venire members who previously had served on juries that were not able to reach a decision because of a prosecutor’s error. The Batson analysis has three steps, and it is imperative that a trial judge follow those steps accordingly.
¶ 25. A trial judge, of course, has great deference in this regard.[22] But the proponent of a strike — at the second step of the analysis — need only show a *1100 race-neutral reason. “ ‘At this second step of the inquiry,’ ” wrote the United States Supreme Court in. Purkett v. Elem, “ ‘the issue is the facial validity of the [proponent’s] explanation.’ ”[23] The Court went on to say that “ ‘[u]nless a discriminatory intent is inherent in the [proponent’s] explanation, the reason offered will be deemed race neutral.’ ”[24] There, the Court held that the Eighth Circuit Court of Appeals had erred by combining steps one and two of the Batson analysis, and that the State’s explanation — that the venire member had long, unkempt hair, a mustache, and a beard — satisfied the second step of the Batson analysis.[25] Thus, it is at the third-step (pretext) — not the second step of the analysis — that persuasiveness becomes relevant.[26] The second step of the analysis does not even require the explanation to be “plausible.”[27]
¶ 26. Here, the trial judge never made it to the third step of the analysis, instead finding Hardison’s concern — that the veni-re member was proprosecution — was not race-neutral. We find that Hardison provided the trial court with a race-neutral reason, requiring the trial judge to proceed to the third step of the Batson analysis. His failure to do so constituted clear error.
¶ 27. The dissent incorrectly argues that Hardison did not raise this issue. Its underlying argument is that the “trial court erred when it sustained the objection of the prosecution the peremptory challenges made by Hardison.” The prima facie case is a prong of the Batson analysis, which Hardison clearly addressed in his brief. Also, the trial judge denied only one peremptory strike, so the dissent’s argument that Hardison did not specifically mention Gray is irrelevant. The dissent — characterizing the trial judge’s ruling as “inarticulate terminology”[28] — fails to see that the trial judge never allowed the parties to address pretext, the third step in the Batson process.
¶ 28. When a party makes a Bat-son challenge, the burden falls on it to show a prima facie case of discrimination.[29] Once shown, the burden shifts to the other side to give a sufficient race-neutral reason.[30] If, at this stage, a trial judge properly finds the party has failed to provide a race-neutral reason, the question of pretext never arises, and the juror is returned to the jury. But when — as here — the party offers a valid race-neutral reason, the trial judge must allow the strike unless the other party demonstrates that the valid race-neutral reason was a pretext for discrimination.[31]
■¶ 29. No case — in any jurisdiction — has found that a party wishing to exercise a peremptory strike with a race-neutral reason must, even without a challenge from the other party, prove the absence of pretext. Such a holding would create a two-pronged test, which the United States Supreme Court already has rejected.[32]
*1101 ¶ 30. Had the trial judge (as he should have) found that Hardison’s reason was race-neutral, then the State would have had the opportunity and burden to prove pretext. And had the judge allowed the State to proceed with a pretext argument* and had the State made one, Hardison would then have had the opportunity to respond. But the judge never did. The State never argued pretext. And Hardi-son, of course, could not rebut an argument the State was never given the opportunity to make.
¶31. We recognize several factors under the pretext prong: “the extent and nature of voir dire on the grounds upon which the strike is being exercised; the relation between the reason for the strike and the facts of the case; the demeanor of the attorney and the prospective juror; and disparate impact upon a minority or gender class.”[33] The trial judge, however, never made it to the pretext phase. So the dissent not only forgives the trial judge for not moving to the pretext phase, it also forgives the State for failure to show pretext. We instead hold that the trial judge’s failure to conduct a proper Batson analysis constituted clear error.

C. Reversible error

¶32. We now must determine whether this error requires reversal. In Rivera v. Illinois, the United States Supreme Court held that an erroneous denial of a defendant’s peremptory challenge did not require automatic reversal pursuant to the Due Process Clause of the Fourteenth Amendment.[34] There, the Court recognized that a defendant does not have a freestanding constitutional right to peremptory challenges.[35] But the Court also noted that, “[ajbsent a federal constitutional violation, States retain the prerogative to decide whether such errors deprive a tribunal of its lawful authority and thus require automatic reversal.”[36] At least five states have done just that.
¶ 33. Iowa, Massachusetts, Minnesota, New York, and Washington— in their own reverse—Batson cases—all held that a trial judge’s erroneous denial of a defendant’s peremptory strike requires automatic reversal.[37] We follow their lead and hold that a trial court cannot deprive defendants of their right to a peremptory strike unless the trial judge properly conducts the analysis outlined in Batson. Here, under our Uniform Circuit and County Court Rules, Hardison had a right to twelve peremptory strikes.[38] The judge, having erroneously denied him that right, erred.
¶ 34. A juror’s right to equal protection, of course, is crucial. But as Iowa’s Supreme Court noted, “[a]dherence to the proper, three-step Batson analysis is sufficient to ensure that all parties are allowed to use their peremptory challenges while complying with the Constitution’s equal protection requirements.”[39] And as another court noted, the question “is *1102 whether the erroneous denial of a peremptory challenge can ever be harmless when the objectionable juror actually sits on the panel that convicts the defendant.”[40] We hold that it cannot. Therefore, when a trial judge erroneously denies a defendant a peremptory strike by failing to conduct the proper Batson analysis, prejudice is automatically presumed, and we will find reversible error.
¶ 35. The dissent’s discussion of a juror’s right to sit on a jury is misplaced. A potential juror’s right to sit on a jury has never been held to trump the accused’s right to a peremptory strike. What the Batson Court did say, of course, was that a juror has a constitutional right to be free from discrimination during voir dire.[41] That issue is not before us.
¶ 36. Finally, we must address the dissent’s observation that “no injustice should be presumed when a jury is equally balanced, racially, as in today’s case.”[42] But racial balancing is relevant only at the prima facie phase of the Batson analysis,[43] which is not an issue here.
CONCLUSION
¶ 37. Of the 833 days between Hardi-son’s indictment and trial, 701 are attributable to Hardison himself. We find that the Barker factors do not weigh in his favor, and hold that Hardison’s Sixth Amendment right to a speedy trial was not violated. We do hold, however, that the trial judge committed clear and reversible error by denying Hardison’s right to a peremptory strike. We therefore reverse and remand for a new trial.
¶ 38. REVERSED AND REMANDED.
KITCHENS, CHANDLER AND KING, JJ„ CONCUR. WALLER, C.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION. CARLSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, LAMAR AND PIERCE, JJ.

. Batson v. Kentucky, 476 U.S. 79, 82-84, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. U.S. Const, amend. VI.

. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

. Price v. State, 898 So.2d 641, 648 (Miss.2005) (citing Beavers v. State, 498 So.2d 788, 790 (Miss.1986) (citations omitted)).

. United States v. Hill, 622 F.2d 900, 909 (5th Cir.1980) (citing Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) (per curiam); United States v. Marion, 404 U.S. 307, 320-21, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

. See, e.g., Smith v. State, 550 So.2d 406, 408 (Miss.1989).

. Barker v. Wingo, 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101 (1972).

. Thomas v. State, 48 So.3d 460, 476 (Miss.2010) (citing Jefferson v. State, 818 So.2d 1099, 1107-108 (Miss.2002); Brengettcy v. State, 794 So.2d 987, 994 (Miss.2001)) (internal quotations omitted).

. State v. Ferguson, 576 So.2d 1252, 1255 (Miss.1991) (citing Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); Prince v. Alabama, 507 F.2d 693, 707 (5th Cir.1975)); Ross, 605 So.2d at 23 (citing Ferguson, 576 So.2d at 1255).

. Batson, 476 U.S. at 82-84, 106 S.Ct. 1712 (holding that the prosecution cannot discriminate racially in its use of peremptory strikes).

. Id.

. Griffin v. State, 610 So.2d 354, 356 (Miss.1992) (citing Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992)).

. Bailey v. State, 78 So.3d 308, 318-20 (Miss.2012); Henley v. State, 729 So.2d 232, 239-41 (Miss.1998).

. Pitchford v. State, 45 So.3d 216, 224 (Miss.2010) (emphasis added) (citing Flowers v. State, 947 So.2d 910, 917 (Miss.2007)).

. Henley, 729 So.2d at 239 (citing Batson, 476 U.S. at 96, 106 S.Ct. 1712).

. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

. Id. at 416, 111 S.Ct. 1364.

. Id.

. Birkhead v. State, 57 So.3d 1223, 1230 (Miss.2011).

. Pitchford, 45 So.3d at 226 (quoting Lynch v. State, 877 So.2d 1254, 1270 (Miss.2004)).

. Davis v. State, 660 So.2d 1228, 1242 (Miss.1995).

. Berry v. State, 802 So.2d 1033, 1037 (Miss.2001) (citing McGilberry v. State, 741 So.2d 894, 923 (Miss.1999)).

. Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam) (quoting Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion)).

. Purkett, 514 U.S. at 768, 115 S.Ct. 1769.

. Id.

. Id.

. Id. at 767-68, 115 S.Ct. 1769.

. Dis. Op. at ¶ 40.

. Pitchford, 45 So.3d at 224.

. See id.

. See id.

. See Purkett, 514 U.S. at 768, 115 S.Ct. 1769 (holding that the race-neutral prong and the pretext prong are to be separately decided).

. Henley v. State, 729 So.2d 232, 240 (Miss.1998) (footnotes omitted).

. Rivera v. Illinois, 556 U.S. 148, 161-62, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009).

. Id. at 157, 129 S.Ct. 1446.

. Id. at 161-62, 129 S.Ct. 1446.

. State v. Mootz, 808 N.W.2d 207, 225-26 (Iowa 2012); Commonwealth v. Hampton, 457 Mass. 152, 928 N.E.2d 917, 926-27 (2010); Angus v. State, 695 N.W.2d 109, 118 (Minn.2005); People v. Hecker, 15 N.Y.3d 625, 917 N.Y.S.2d 39, 942 N.E.2d 248, 272-73 (2010); State v. Vreen, 143 Wash.2d 923, 26 P.3d 236, 238-40 (2001).

. URCCC 10.01.

. Mootz, 808 N.W.2d at 226.

. Vreen, 26 P.3d at 240.

. Batson, 476 U.S. at 79, 106 S.Ct. 1712.

. Dis. Op. ¶ 40.

.See Birkhead v. State, 57 So.3d 1223, 1230 (Miss.2011) (holding that the Court would not overturn the trial court’s denial of the defendant's Batson challenge without knowing the racial makeup of the jury or venire).