# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01454-COA

**CORTEZ WATTS**                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                   **APPELLEE**

DATE OF JUDGMENT:               09/29/2017
TRIAL JUDGE:                    HON. CHARLES E. WEBSTER
COURT FROM WHICH APPEALED:      TUNICA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: MOLLIE MARIE MCMILLIN
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: KATY TAYLOR GERBER
DISTRICT ATTORNEY:              BRENDA FAY MITCHELL
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    REVERSED AND REMANDED - 01/29/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Cortez Watts was charged with conspiracy to commit armed robbery, attempted armed robbery, armed robbery, aggravated assault, and possession of a firearm by a convicted felon in the Circuit Court of Tunica County.  Following trial, the jury returned verdicts of guilt for conspiracy to commit armed robbery, attempted armed robbery, aggravated assault, and possession of a firearm by a convicted felon.  Watts, however, was acquitted of armed robbery and was sentenced to five years for conspiracy to commit armed robbery, twenty-five years for attempted armed robbery, fifteen years for aggravated assault, and ten years for

possession of a firearm by a convicted felon.  The trial court also sentenced Watts to serve two additional ten-year sentences for firearm enhancements on the aggravated assault and attempted robbery charges.  Watts filed for a motion for a judgment notwithstanding the verdict (JNOV), or in the alternative, for a new trial, which the trial court denied.  Watts appeals.  After our review of the record, we find reversible error in the trial court's denial of Watts's peremptory strike without a proper *Batson*[1] analysis.  Accordingly, we reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2.    Derek Phillips and Barry McCray went to the Horseshoe Casino in Tunica, Mississippi in October 2016.  Phillips and McCray testified that they noticed a man and woman seated behind them at the casino.  Phillips stated that the man asked him for a cigarette and he obliged.  Later, Phillips noticed that the man was gone, but the woman was still seated.  This woman was later identified as Tanyatta Kinnel.  Kinnel slipped Phillips her phone number before leaving the casino.  Surveillance video from the Horseshoe Casino corroborated Phillips and McCray's story.  Phillips sent a text message to Kinnel when he left the casino because he wanted her to have his phone number.  Kinnel then asked Phillips to bring her a soda since she lost her money at the casino.

¶3.    When Phillips and McCray arrived at Kinnel's apartment, Kinnel asked Phillips to get out of the car and give her a hug.  Phillips testified that as he exited the car, a man, later identified as Javonte Watts, complimented his car.  Shortly after this exchange, Phillips saw

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

McCray running from the car. McCray later testified that a man, later identified as Javonte Watts, took his cell phone and keys, but he was able to call the police with another phone McCray had in his possession. Cortez Watts appeared and demanded that Phillips give him the money he had just won from the casino. After Phillips refused, Watts pulled a gun. Phillips says that he was able to run and hide from Watts, but the two were later involved in a physical altercation which resulted in Phillips being shot in the neck.

¶4. Phillips and McCray were taken to the hospital and treated for their injuries. Phillips was shown photo lineups and identified Cortez Watts as the man who shot him. He also identified Kinnel as the woman who gave him her phone number at the casino. Subsequently, Watts was arrested and charged with conspiracy to commit armed robbery, attempted armed robbery of Phillips, armed robbery of McCray, aggravated assault against Phillips, and possession of a firearm by a convicted felon. Following a jury trial, Watts was acquitted of armed robbery; however, the jury convicted Watts on the remaining counts.

¶5. Watts filed a JNOV motion, or in the alternative, for a new trial, which the trial court denied. Watts timely appeals.

## DISCUSSION

### I. Whether the trial court erroneously denied Watts's peremptory strike.

¶6. Watts asserts that the trial court erroneously denied his constitutional right to a jury of his peers when it sustained the State's objection to his peremptory strike. Watts maintains that the trial court did not complete a full *Batson* analysis and that the facts in this case are analogous to the facts in *Hardison v. State*, 94 So. 3d 1092 (Miss. 2012). In *Hardison*, the

Supreme Court found that "[a] trial judge committed clear and reversible error by denying Hardison's right to a peremptory strike," and the case was remanded for a new trial. *Id*. at 1102 (¶37). "During voir dire [in that case], [a] juror had expressed regret that the jury was unable to reach a verdict" after previously serving on a jury in a criminal case. *Id*. at 1095 (¶1). Hardison's trial counsel struck the juror based on his response, and "the State raised a *Batson* challenge." *Id*. at (¶2). "The trial judge required Hardison's counsel to provide a race-neutral reason for the strike." *Id*. After reiterating the juror's statement as the reason for exercising the strike, the trial court found that Hardison's reason was not a valid race-neutral reason and denied the peremptory strike.

¶7. During jury selection in this case, Watts struck three white potential jurors.[2] The State made a *Batson* challenge alleging discrimination on the basis of race. The Mississippi Supreme Court analyzes a *Batson* challenge using a three-part test:

> First, the party objecting to the peremptory strike of a potential juror must make a prima facie showing that race was the criterion for the strike. Second, upon such a showing, the burden shifts to the State to articulate a race-neutral reason for excluding that particular juror. Finally, after a race-neutral explanation has been offered by the prosecution, the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory strike, i.e., that the reason given was a pretext for discrimination.

*Hardison*, 94 So. 3d at 1098 (¶17).

### A. Prima Facie Showing

¶8. "To establish a prima facie case, the opponent of a peremptory strike must establish that (1) the opponent is a member of a cognizable class, such as a racial group; (2) the

_____

[2] Juror 3 is the only juror at issue in this case.

4

proponent has used peremptory strikes to remove venire members in that class; and (3) the facts and circumstances give rise to an inference that the proponent used peremptory strikes to purposefully remove individuals of that class." *Id*. at 1098 (¶18). However, the United States Supreme Court essentially found that "[t]he critical inquiry, then, is whether 'the opponent has met the burden of showing that the proponent has engaged in a pattern or practice of strikes based on race or gender.'" *Id*. (quoting *Powers v. Ohio*, 499 U.S. 400, 416 (1991)).

¶9.    The following exchange took place while empaneling the jury:

> STATE:    Yes sir, I - - We would like to raise a *Batson* challenge.
>
> The Court:    On what basis?
>
> . . . .
>
> STATE:    Race.
>
> . . . .
>
> The Court:    Alrighty. Well, let's look and see. I have - - out of the jurors that were available, appears I have three whites, that would 3 - - number 3, John Ruth - - hold on, thought I had another one. Who - -
>
> State:    Yeah, number 9, Zachery, and number - - back - - number 35, Walton. Number 3, Ruth, was struck by the Defense; as was number 9; as was 35, Walton. Well since they were the only three whites available and they each were struck by the Defense, I will say that it appears that a pattern has been established.

¶10.    The record reflects that out of all that had been impaneled, the defense struck the only three white members available. Accordingly, we find that the trial court properly found a prima facie case of racial discrimination. "After a prima facie case has been made, the party

5

exercising the challenge has the burden to articulate a race-neutral explanation for excluding the potential juror." *Allen v. State*, 235 So. 3d 168, 172 (¶10) (Miss. Ct. App. 2017).

### B.    *Race-neutral Reasons*

¶11.    The court allowed three of Watts's peremptory strikes against white venire members but found that Watts did not present a sufficient race-neutral reason for striking Juror 3. "When reviewing a *Batson* challenge, we will not overrule a trial judge's decision unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence." *Hardison*, 94 So. 3d at 1098 (¶20) (internal quotation marks omitted). This exchange took place while empaneling the jury:

The Court:    All right. Having made that determination, go back now and tell me your basis for striking number 3, John Ruth.

Defense:    For Mr. Ruth, he's a banker. He knows a lot of people in the community, feel like he, you know, may know - - may know more people than what he - -

The Court:    How do you know he knows a lot of people? Did you ask him any questions?

Defense:    Well, he didn't answer any questions but he's a banker and that would be my reason.

The Court:    Because he's a banker?

Defense:    Yes, sir.

The Court:    Okay. Do you think he'd know more people than a nurse or a cashier?

Defense:    Yes.

State:    I don't think it was established that he was a actual banker, Your Honor. I think it just - -

6

The Court:  Well, it says - - Well, that's true, it says Mr. - -

State:  He works - -

The Court:  - - he works at First Security Bank sometimes.

State:  He could be maintenance.  He could be in the vault all day.  We don't know how many people he sees.

The Court:  I sustain - - I'll sustain the objection there.  I'm gonna back up and I'm going to put [juror 3] on the jury. . . .

¶12.  Here, we find that the trial court committed reversible error by adding juror 3 to the jury.  Watts offered a race-neutral reason, and the State failed to demonstrate that the race-neutral reason was a pretext for discrimination.

> When a party makes a *Batson* challenge, the burden falls on it to show a prima facie case of discrimination.  Once shown, the burden shifts to the other side to give a sufficient race-neutral reason.  If, at this stage, a trial judge properly finds the party has failed to provide a race-neutral reason, the question of pretext never arises, and the juror is returned to the jury. But when - - as here - - the party offers a valid race-neutral reason, the trial judge must allow the strike unless the other party demonstrates that the valid race-neutral reason was a pretext for discrimination.

*Hardison*, 94 So. 3d at 1100 (¶28) (citations omitted).

¶13.  "Our supreme court has set out a non-exhaustive list of valid race-neutral reasons for the exercise of peremptory challenges. . . ." *Perry v. State*, 949 So. 2d 764, 767-68 (¶7) (Miss. Ct. App. 2006).  This list includes "living in a 'high crime' area, body language, demeanor, [distrust of a juror by the party exercising the strike], inconsistency between oral responses and juror's card, criminal history of juror or relative, social work and *other types of employment*, and religious beliefs." *Id*. (emphasis added).

¶14.  The Mississippi Supreme Court also noted the following in *Hardison*:

In *Davis v. State*, we listed sufficient race-neutral reasons for striking venire members: "age, demeanor, marital status, single with children, prosecutor distrusted juror, educational background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in community, posture and demeanor indicated juror was hostile to being in court, juror was late, short term employment." Hardison's reason—that Gray's responses about a prior jury experience indicated he might be proprosecution—certainly qualifies as race-neutral. If a prosecutor's distrust of a venire member is a race-neutral reason, then a defendant's distrust must be as well. It is important to point out here that the trial judge never addressed the issue of pretext; he simply held that the stated reason was not race-neutral.

*Hardison*, 94 So. 3d at 1099 (¶23) (citation omitted).

¶15. Here, Watts stated that the reason that he struck Juror 3 was because he was a banker. The record reflects that the trial court never analyzed how this particular strike compared to others; that is, whether the defense had accepted other venire members that were bank employees. The judge mentioned whether Juror 3 would know more people than a nurse or a cashier, and the State replied that he could work maintenance and not see people at all. But, the trial court did not proceed to the third part of the *Batson* analysis—pretext. "[W]hen—as here—the party offers a valid race-neutral reason, the trial judge must allow the strike unless the other party demonstrates that the valid race-neutral reason was a pretext for discrimination." *Hardison*, 94 So. 3d at 1100 (¶28). Furthermore, the trial court never determined whether other bankers or people employed at the bank were accepted as jurors. We note that "[t]he *Batson* analysis has three steps, and it is imperative that a trial judge follow those steps accordingly." *Hardison*, 94 So. 3d at 1099 (¶24). "[I]t is at the third-step (pretext)—not the second step of the analysis—that persuasiveness becomes relevant." *Id.* at 1100 (¶25).

8

## C. Reversible Error

¶16.    "When a trial judge erroneously denies a defendant a peremptory strike by failing to conduct the proper *Batson* analysis, prejudice is automatically presumed, and we will find reversible error." *Id.* at 1102 (¶34).  I respectfully disagree with my colleague's analysis of the *Hardison* case and his suggestion to our state's highest Court.  His suggestion seems to dismiss the actuality that our Mississippi Supreme Court is not bound by the United States Supreme Court's decisions when guaranteeing or extending more protections under the Constitution.  The system of federalism envisaged by the United States Constitution tolerates such divergence even if the result provides greater protection of individual rights under state law than under federal law.[3]    In *Hardison*, the Mississippi Supreme Court fully acknowledged the holding in *Rivera v. Illinois* that an erroneous denial of a defendant's peremptory challenge did not require automatic reversal pursuant to the federal constitution.  *Hardison*, 94 So. 3d at 1101 (¶34).  Rather than being cemented to that convention, Mississippi, just seven years ago, followed five other states that also held the erroneous denial warrants automatic reversal if the trial court does not properly conduct a *Batson* analysis prior to denying a defendant's peremptory strike. The supreme court went on to add that the question "is whether the erroneous denial of a peremptory challenge can ever be

---

[3] Justice William J. Brennan Jr., State Constitutions and the Protection of Individual Rights, 90 Harv. L. Rev. 489, 500 (1977) (discussing the trend of numerous state courts extending to their citizens, via state-court constitutions, greater and broader protections than those that the United States Supreme Court have deemed applicable under the federal constitution); *see also* U.S. Const. art. IV, § 4 ("The United States shall guarantee to every state in this Union a Republican Form of Government . . . ."). The states were guaranteed a government that is of the people.

harmless when the objectionable juror actually sits on the panel that convicts a defendant."

*Hardison*, 94 So. 3d at 1101-02 (¶34). The supreme court held it cannot. *Id*. at 1102 (¶34).

This holding repelled the notion that such an error can ever be "good faith error or mistake"

under Mississippi law. *Id.*

¶17. We find that Watts provided the trial court with a race-neutral reason, requiring the

trial court to proceed to third step of the *Batson* analysis. The court erred in denying Watts's

a peremptory strike. Accordingly, we find that the case should be reversed and remanded for

a new trial.

## II.     Indictment and Sentencing Enhancements

¶18. Although Watts's first issue is dispositive of this appeal, we will briefly address

Watts's second issue before this Court.

¶19. Two of Watts's convictions carried an enhanced penalty under Mississippi Code

Annotated section 97-37-37(2) (Rev. 2014). This code section states:

> (2) Except to the extent that a greater minimum sentence is otherwise provided
> by any other provision of law, any convicted felon who uses or displays a
> firearm during the commission of any felony shall, in addition to the
> punishment provided for such felony, be sentenced to an additional term of
> imprisonment in the custody of the Department of Corrections of ten (10)
> years, to run consecutively, not concurrently, which sentence shall not be
> reduced or suspended.

¶20. However, Watts maintains that portions of his indictment reference section 97-37-

37(1) and only adds a five year sentence enhancement. As a result, he argues that the

indictment should have referenced subsection 2 and that his indictment is fatally defective.

"This Court reviews de novo the question of whether an indictment is fatally defective."

*Townsend v. State*, 188 So. 3d 616, 619 (¶11) (Miss. Ct. App. 2016). Further, "[w]hether a defendant received fair notice of a sentence enhancement is a question of law that [appellate courts] review de novo." *Sallie v. State*, 155 So. 3d 760, 762 (¶7) (Miss. 2015).

¶21. We have previously held that "[n]o case law requires that an indictment include an actual reference to the sentence enhancement; rather, federal and Mississippi jurisprudence only require that an indictment include the facts involved in such an applicable sentence enhancement, such that those facts are required to be proven beyond a reasonable doubt." *Dortch v. State*, 231 So. 3d 1017, 1021 (¶11) (Miss. Ct. App. 2017).

¶22. Watts was indicted for conspiracy to commit armed robbery, attempted armed robbery, armed robbery, aggravated assault, and possession of a firearm by a convicted felon. The commission of attempted armed robbery requires proof that a firearm was used. The aggravated assault charge in this case was because Watts shot his victim with a pistol. Also, the facts required for application of the firearm enhancement were included in Watts's indictments.

¶23. Moreover, Watts's indictment contained reference to the firearm-enhancement statute. "This Court has previously found that "[i]f from a reading of the indictment as a whole the accused is in fact given fair notice of that with which he has been charged, the indictment is legally sufficient." *Clark v. State*, 232 So. 3d 789, 792 (¶6) (Miss. Ct. App. 2017).

¶24. A fair reading of the indictment as a whole indicates that Watts knew or should have known that the ten-year firearm enhancement was a possibility. Additionally, Count II of the indictment indicated that both Cortez and Javonte Watts were subject to enhancements of 10

years and 5 years, respectively.[4]  Count IV of the indictment indicated that Cortez Watts was subject to an enhancement of 10 years.  Therefore, we find that this issue is without merit.

¶25.  **REVERSED AND REMANDED.**

**TINDELL AND McDONALD, JJ., CONCUR.  McCARTY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McDONALD, JJ.  BARNES, P.J., AND GREENLEE, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WILSON, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, P.J., AND GREENLEE, J.; TINDELL AND LAWRENCE, JJ., JOIN IN PART.  GRIFFIS, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., AND LAWRENCE, J.**

**McCARTY, J., SPECIALLY CONCURRING:**

¶26.  I agree with both the majority and the concurrence by Judge Wilson that precedent requires reversal in this case.  I write separately to underscore exactly why reversal when a *Batson* violation is found is important, and why it cannot be harmless error.

¶27.  In Mississippi, "[i]n all criminal prosecutions the accused shall have a right to . . . a speedy and public trial by an impartial jury of the county where the offense was committed. . . ."  Miss. Const. art. 3, §26.  We long ago decided that this "right of trial by jury shall remain inviolate . . . ."  Miss. Const. art. 3, § 31.

¶28.  In order to give weight to these lofty words, our highest federal court developed a procedure to enforce equality in the selection of juries.  This procedure was created only thirty-two years ago.  *Batson v. Kentucky*, 476 U.S. 79, 87 (1986).  It protects not only those who stand accused, but those who serve as their peers upon a jury: "Racial discrimination

_____

[4] Javonte Watts, Cortez Watts, and Kinnel were co-indictees.  Cortez Watts filed a motion for severance.

12

in selection of jurors harms not only the accused whose life or liberty they are summoned to try." *Id*. In "denying a person participation in jury service on account of his race, the State unconstitutionally discriminate[s] against the excluded juror." *Id*.

¶29. There is then not one harm when the procedure is broken, but two. With such high stakes, we must strictly follow the procedures set out by our Mississippi Supreme Court. It is literally an issue of constitutional importance for both the defendant and the members of the venire that the procedure is followed to the letter.

¶30. The procedure must also be clear from the face of the record. As Judge Wilson noted in his separate opinion, from the transcript of this case there is the "impression . . . that the trial judge believe that the proffered explanation was a pretext," and had the record "been developed and explained" on this point, it "likely would have been affirmed." I agree. One can perhaps infer from the record that the third step was reached, and certainly in the heat of the selection of jurors, these procedures can become muddied. Yet our Constitution of 1890 requires that we do more than infer, and this is why it must be clear from the record that the procedure was carefully followed.

¶31. The dual threat to our citizens is why we must be so careful. Our constitutional requirement that the right to trial by jury remain inviolate is why prejudice is automatically presumed and reversible error attaches. *See Hardison v. State*, 94 So. 3d 1092, 1101-02 (¶¶33-34) (Miss. 2012) (finding reversible error with the wrongful denial of a peremptory challenge). An error of this constitutional magnitude cannot be harmless.

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION**.

13

**WILSON, J., CONCURRING IN PART AND IN THE RESULT:**

¶32.    I concur in the result because I agree with the majority opinion that the Mississippi Supreme Court's 5–4 decision in *Hardison v. State*, 94 So. 3d 1092 (Miss. 2012), requires us to reverse.  I write separately because *Hardison* should be overruled.

¶33.    When the State raised a *Batson* objection[5] to Watts's peremptory strike of juror Ruth, defense counsel articulated a race-neutral explanation for the strike: Ruth was a "banker" or, if not a banker per se, at least worked at a bank sometimes.  That explanation certainly qualifies as race-neutral.  *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (holding that even "implausible," "fantastic," "silly," or "superstitious" explanations are considered race-neutral unless "discriminatory intent is inherent in the . . . explanation").  The defense's proffer of a race-neutral reason for the strike required the trial court to proceed to step three of the *Batson* analysis and determine whether the State could meet its burden of proof that the reason given was a pretext for discrimination.  *Hardison*, 94 So. 3d at 1097-98 (¶17).  Our Supreme Court has held that at step three the trial court must consider how the particular strike compares to other strikes—e.g., whether the defense had accepted black jurors with similar employment.  *Id.* at 1099 (¶24).  Our Supreme Court has also held that at step three the trial judge must give a "clear and reasonably specific explanation for his ruling,"

---

[5] In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the Equal Protection Clause prohibits a prosecutor from exercising peremptory strikes based on race. *Id.* at 89.  In *Georgia v. McCollum*, 505 U.S. 42 (1992), the Court held that the Equal Protection Clause also prohibits a criminal defendant from exercising peremptory strikes based on race.  *Id.* at 59; *but see id.* at 69-70 (Scalia, J., dissenting) (criticizing as "absurd" the notion that "[a] criminal defendant, in the process of defending himself against the state, is held to be acting on behalf of the state").

including on-the-record findings as to whether the proffered explanation is a pretext. *See Hatten v. State*, 628 So. 2d 294, 298-99 (Miss. 1993) (quotation marks omitted). The Court has stated that "[t]he *Batson* analysis has three steps, and it is imperative that a trial judge follow those steps accordingly." *Hardison*, 94 So. 3d at 1099 (¶24).

¶34. In the present case, my impression is that the trial judge believed that the proffered explanation was a pretext. Such a finding likely would have been affirmed if the reasons for it had been developed and explained. Nevertheless, I agree with the majority that the judge's on-the-record ruling did not meet the requirements of *Hardison* and other decisions of the Mississippi Supreme Court.

¶35. As the majority explains, *Hardison* also held that such an error is not subject to harmless-error analysis—i.e., it is "automatically" reversible and can never be deemed harmless. *Id.* at 1101-02 (¶34). Therefore, I also agree with the majority that we are required to reverse Watts's conviction and remand the case for another trial.

¶36. *Hardison* adopted its automatic reversal rule even though the United States Supreme Court had declined to do so. In *Rivera v. Illinois*, 556 U.S. 148 (2009), the Court considered the same type of error that is alleged in this case—i.e., the trial judge denied one of the defendant's peremptory challenges and seated the juror based on a misapplication of *Batson*. In a unanimous opinion by Justice Ginsburg, the Court held that such an error may be harmless and does not require reversal. *See id.* at 162. The *Rivera* opinion made three important points in support of the Court's holding.

¶37. *First*, the erroneous denial of a peremptory challenge "is *not* a matter of federal

constitutional concern." *Id.* at 157 (emphasis added). "Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Id.* at 158; *see also Flowers v. State*, 947 So. 2d 910, 939 (¶72) (Miss. 2007) (plurality opinion) ("[T]he right of peremptory challenge is not of constitutional magnitude. . . ." (quoting *Batson*, 476 U.S. at 108 (Marshall, J., concurring)). Thus, with all respect, the special concurrence is simply mistaken when it characterizes the denial of Watts's peremptory challenge as "[a]n error of . . . constitutional magnitude." *Ante* at ¶31.

¶38.    *Second*, the erroneous denial of a peremptory challenge also is not a "*Batson* violation." That is, such an error does not result in any venire member's exclusion from the jury on account of his or her race. *Rivera*, 556 U.S. at 161 (stating that *Batson* is "inapposite" for this reason). Rather, this case involves only a "trial judge's . . . good-faith, if arguably overzealous, effort to *enforce* the antidiscrimination requirements of [*Batson* and its progeny]." *Id.* at 160 (emphasis added). The only issue in this case is that a venireman who worked at a bank *sat* on the jury over Watts's objection because the judge perceived Watts had struck him for a discriminatory reason. Even the majority in *Hardison* recognized that such an error does not involve any discrimination in the selection of the jury. Put simply, "[t]hat issue is not before us." *Hardison*, 94 So. 3d at 1102 (¶35).[6]

---

[6] Therefore, the special concurrence's emphasis on the "harm" and "threat" of racial discrimination in jury selection is misplaced. *Ante* at ¶¶29, 31. I agree with the special concurrence that, under binding precedent, a "*Batson* violation . . . cannot be harmless error." *Ante* at ¶26; *see Weaver v. Massachusetts*, 137 S. Ct. 1899, 1904 (2017). However, the error in this case is not a "*Batson* violation." *See Rivera*, 556 U.S. at 161.

16

¶39.   *Third*, the erroneous denial of a peremptory challenge does "not deprive [the defendant] of his constitutional right to a fair trial before an impartial jury." *Rivera*, 556 U.S. at 158.   Again, all that we know about juror Ruth is that he worked at a bank.   There is nothing to even suggest that Ruth was partial or subject to challenge for cause for any reason. Ruth's service on the jury did not render Watts's trial unfair.   Rather, as the United States Supreme Court put it, Watts "received precisely what due process required: a fair trial before an impartial and properly instructed jury, which found him guilty of every element of the charged offense." *Id.* at 162.

¶40.   For all these reasons, if we were writing on a clean slate, I would follow the reasoning of *Rivera* and a number of state courts that have held that the erroneous denial of a peremptory strike is subject to harmless-error analysis.[7]   But, again, we are not writing on a clean slate.   Without any real explanation as to why, *Hardison* held that reversal is automatic in this situation.   *Hardison*, 94 So. 3d at 1101-02 (¶34).   We are bound to follow Mississippi Supreme Court precedent.   Therefore, I agree with the majority that Watts's conviction must be reversed.

¶41.   I write separately because today's case clearly illustrates that *Hardison*'s rule of automatic reversal is unwise and ill-considered.   There is no dispute that the jury's verdict finding Watts guilty of multiple serious felonies is supported by ample evidence.   Moreover, Watts received a fair trial before an impartial jury.   All that we know about juror Ruth is that

---

[7] *See Hardison*, 94 So. 3d at 1110 (¶61) (Carlson, P.J., dissenting) (collecting cases); *People v. Singh*, 184 Cal. Rptr. 3d 790, 798-801 (Cal. Ct. App. 2015); *State v. Carr*, 331 P.3d 544, 636-41 (Kan. 2014), *rev'd on other grounds*, 136 S. Ct. 633 (2016); *State v. Letica*, 356 S.W.3d 157, 165-66 (Mo. 2011).

he was a banker or possibly just worked at a bank sometimes. Ruth was qualified and competent to serve on the jury, and there is no evidence that he was biased or challengeable for cause on any ground. There is absolutely no reason to think that Watts was denied a fair trial because Ruth was on his jury. In short, the alleged error was harmless, and the conviction should be affirmed.[8] However, the Supreme Court's decision in *Hardison* requires us to reverse Watts's conviction—all because a bank employee sat on the jury. With all respect, *Hardison*'s rule of automatic reversal is a very bad rule. It does not protect the defendant's right to a fair trial, and it does not serve the interests of justice. Our Supreme Court should revisit this issue and overrule *Hardison*. In this case, I follow *Hardison* and concur in the majority's disposition of this case only because I must.

**BARNES, P.J., AND GREENLEE, J., JOIN THIS OPINION. TINDELL AND LAWRENCE, JJ., JOIN THIS OPINION IN PART.**

**GRIFFIS, C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶42. I agree with the majority's findings and conclusion regarding the indictment and sentencing enhancements, but I disagree that the trial court committed reversible error in its *Batson* analysis. Thus, I concur in part and dissent in part.

---

[8] In the alternative, this could be an appropriate case to remand for a hearing and additional findings on the *Batson* issue, as our Supreme Court did recently in *H.A.S. Electrical Contractors Inc. v. Hemphill Construction Co.*, 232 So. 3d 117, 125 (¶¶26-27) (Miss. 2016). However, in *Hardison* the Supreme Court reversed and remanded for a new trial without considering the alternative of a remand for an additional hearing and findings to complete the trial court's *Batson* analysis. *See Hardison*, 94 So. 3d at 1101-02 (¶¶30-34). The issue before us and the procedural posture of this case are not materially distinguishable from the issue and procedural posture of the case in *Hardison*. Therefore, under the circumstances, I can only conclude that this Court is bound to grant the same relief granted by the Supreme Court in *Hardison*.

¶43. The majority asserts that "the trial court did not proceed to the third part of the *Batson* analysis — pretext." I respectfully disagree.

¶44. "Pretext" is defined as "[a] false or weak reason or motive advanced to hide the actual or strong reason or motive." Black's Law Dictionary 967 (7th ed. 2000). By questioning defense counsel, exposing the weakness of the race-neutral reason for the peremptory strike, and placing Juror 3 back on the jury, the trial court did proceed to the third part of the *Batson* analysis and find that the reason given was a pretext for racial discrimination.

¶45. In *Hardison*, the trial court found the reason given was not race-neutral and therefore never addressed the third step of *Batson*. *Hardison*, 94 So. 3d at 1099 (¶23). Here, Watts provided a race-neutral reason. Indeed, as the majority notes, "social work and other types of employment" are valid race-neutral reasons for the exercise of peremptory challenges. The trial court then evaluated the persuasiveness of that reason to determine whether it was a pretext for discrimination. Although the trial judge did not specifically state that the race-neutral reason was pretextual, the fact that the trial judge questioned defense counsel about the stated reason, sustained the State's objection to Watts's peremptory strike, and placed Juror 3 on the jury is sufficient to indicate that he addressed the third part of *Batson* and found purposeful discrimination in the exercise of the peremptory strike.

¶46. I am of the opinion that the record reflects the trial court conducted a proper *Batson* analysis. There is nothing in the record to indicate that the trial court's ruling was clearly erroneous or against the overwhelming weight of the evidence. Accordingly, the trial court did not err in denying Watt's peremptory strike.

**CARLTON, P.J., AND LAWRENCE, J., JOIN THIS OPINION.**