# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-KA-01317-SCT

*CULLEN ROYCE FIELDS*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2020 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| TRIAL COURT ATTORNEYS: | KATHRYN LINDSEY NEWMAN |
| | HEIDLE CARTER SMITH |
| | JOEY WAYNE MAYES |
| | ANSELM J. McLAURIN |
| | BRENT M. BRUMLEY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/28/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., BEAM AND ISHEE, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. Cullen Fields was convicted of sexual battery after a jury trial in the Rankin County Circuit Court. Fields claims that the trial court erroneously denied his right to exercise two of his peremptory strikes during jury selection. We find that the trial court did not err by

denying the two peremptory strikes Fields sought to exercise. Accordingly, we affirm Fields's conviction.

## FACTS AND PROCEEDINGS

¶2. After a night of drinking at Fields's home in Pearl, Mississippi, Fields's nephew's then-fiancée, J.D.,[1] fell asleep on the couch from drinking too much. When she woke up, Fields was on top of her engaging in sexual intercourse. J.D. pushed Fields off of her, gathered her clothes, and went into the bathroom to get dressed. J.D. went into an adjacent room and tried to lie down with her young daughter, who was asleep in the bed. Unable to sleep, J.D. went outside and called her mother. She told her that Fields had raped her, and her mother told her to call the police.

¶3. J.D. woke her daughter, and the two left Fields's home. J.D. called the police and met them at a local gas station. After telling the police what happened, she went to the University of Mississippi Medical Center, where a sexual-assault examination was conducted.

¶4. Vaginal swabs tested positive for seminal fluid. A DNA analyst found a mixture of two male DNA profiles on the swabs and later testified that Fields could not be excluded as a possible contributor to the mixture.

¶5. Fields testified at trial that he had sexual intercourse with J.D., but he said that the encounter was consensual and that she had initiated the sexual activity.

¶6. During jury selection, the State challenged Fields's use of peremptory strikes against four women on the jury panel. After Fields's fourth peremptory strike, the State objected,

---

[1] Pseudonym initials are used to protect the identity of the alleged victim.

2

alleging, "[i]t's pretty obvious he is striking these based on their gender." The trial court found that all four strikes had been used against females and asked Fields for gender-neutral reasons for striking the jurors.

¶7. Fields's first strike, D-1, was used against Juror Number 2. Fields's trial counsel said he struck Juror Number 2 because she was a nurse, and nurses often deal with victims. The State responded that she had not talked about being a nurse in voir dire. The trial court found that the reason was gender-neutral and allowed the strike to stand.

¶8. Fields used D-2 against Juror Number 11. Counsel explained that he struck Juror Number 11 because she knew the detective in the case and because her husband worked for the fire department. The trial court accepted the gender-neutral reason.

¶9. D-3 was used against Juror Number 19. Counsel stated, "I had her in my maybe category anyway. I was just looking for somebody that I felt was better . . . . That's the only reason that I struck her. I just felt like there were some better jurors for him. But I don't have any reason other than that." The trial court asked for a response from counsel for the State, who said, "I don't believe that's a sufficient reason." The trial court then seated Juror Number 19 as a juror.

¶10. D-4 was used against Juror Number 22. When the trial court inquired about Juror Number 22, defense counsel stated, "There again, Your Honor, I've got her in my maybe category. I just felt like there was somebody better." The trial court then asked defense counsel if he had any gender-neutral reason to offer for the record, to which defense counsel

3

replied, "No, Your Honor." In response, counsel for the State said, "that's not a sufficient gender-neutral reason." The trial court said it had no choice but to seat Juror Number 22.

¶11. Fields claims on appeal that the trial court erred by seating the two jurors after he used peremptory strikes against them. Fields contends that he offered gender-neutral reasons for striking the two because he wanted to make room for jurors further back in the panel. He claims that the trial court did not hold the State to its burden of showing that Fields struck the jurors with a discriminatory intent. Therefore, he urges this Court to reverse his conviction and remand his case for a new trial.

### DISCUSSION

¶12. Use of peremptory challenges to discriminate against potential jurors violates the excluded juror's right to equal protection if the strike is used against an otherwise qualified juror solely because that juror is a member of a cognizable race or gender. *J.E.B. v. Alabama*, 511 U.S. 127, 145, 114 S. Ct. 1419, 1429-30, 128 L. Ed. 2d 89 (1994) (extending the prohibition against racial discrimination held in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), to gender-based peremptory challenges). Either party has standing to challenge the other party's discriminatory use of peremptory challenges. *Georgia v. McCollum*, 505 U.S 42, 59, 112 S. Ct. 2348, 2359, 120 L. Ed. 2d 33 (1992) (holding that a prosecutor may object to a defendant's use of peremptory challenges).

¶13. As with *Batson* claims, there is a three-step process for evaluating jury-selection gender-discrimination claims. First, "a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge

4

is required to explain the basis for the strike." ***Brawner v. State***, 872 So. 2d 1, 10 (Miss. 2004) (citing ***J.E.B***, 511 U.S. at 145). Second, if the requisite showing has been made, the burden shifts to the striking party to rebut the showing by offering a gender-neutral explanation or reason for challenging the prospective juror(s). ***Id.*** at 9-10 (The explanation "need not rise to the level of a 'for[-]cause' challenge; rather, it merely must be based on a juror characteristic other than gender, and the proffered explanation may not be pretextual." (citing ***Hernandez v. New York***, 500 U.S. 352, 362-63, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991) (plurality))). Third, if a reason is given, the trial court must make an on-the-record determination that the reason proffered is, in fact, gender-neutral. ***Id.*** "In other words, the trial judge must determine whether the reason given is a pretext for discrimination." ***Id.*** at 9-10 (citing ***Hernandez***, 500 U.S. at 363).

¶14. In ***Hardison v. State***, 94 So. 3d 1092, 1100 (Miss. 2012), this Court explained that if, at the second stage, the trial court properly finds that the exercising party has failed to provide a gender-neutral reason, "the question of pretext never arises, and the juror is returned to the jury."

¶15. This Court affords "great deference" to a trial court's decision under ***Batson*** or ***J.E.B.***, and this Court will not reverse unless the decision is shown to be "clearly erroneous" on appeal. ***Birkhead v. State***, 57 So. 3d 1223, 1229 (Miss. 2011) (quoting ***Berry v. State***, 802 So. 3d 1033, 1037 (Miss. 2001)).

¶16. Fields contends that he offered a gender-neutral reason for striking the two jurors in question: he wanted to make room for jurors further back on the panel. And, he says, the trial

5

court erred by not holding the State to its burden of showing that the proffered reason was pretext for discrimination. Fields cites *Hardison*, which held that "when a trial judge erroneously denies a defendant a peremptory strike by failing to conduct the proper *Batson* analysis, prejudice is automatically presumed, and we will find reversible error." *Hardison*, 94 So. 3d at 1102.

¶17.    At the outset, the record does not show the gender makeup of the venire. Thus, we cannot determine how the defendant's strikes compared to the overall composition of the venire. *Id.* at 1098 (finding same with the lack of record information as to the racial makeup of the venire). Accordingly, as was reiterated in *Hardison*, we cannot say that the trial court erred by finding a prima facie case of gender discrimination. *Id.* ("[w]e cannot override the trial court when this Court does not even know the racial makeup of the venire or the jury." (internal quotation marks omitted) (quoting *Birkhead*, 57 So. 3d at 1230)).

¶18.    Therefore, the next step is to look at whether Fields provided a gender-neutral reason for the peremptory strikes. As mentioned, the reason "need not rise to the level of a 'for[-]cause' challenge; rather, it merely must be based on a juror characteristic other than gender, and the proffered explanation may not be pretextual." *Brawner*, 872 So. 2d at 9-10 (citing *Hernandez*, 500 U.S. at 363). "The second step of the process does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995) (per curiam). It does though require at least "'a clear and reasonably specific' explanation of [the striking attorney's] 'legitimate reasons' for

exercising the challenge[].” ***Lockett v. State***, 517 So. 2d 1346, 1352 (Miss. 1987) (internal quotation marks omitted) (quoting ***Batson***, 476 U.S. at 98 n.20).

¶19.    Here, we find that defense counsel's explanations for striking Jurors Numbers 19 and 22 were too vague and unspecific to say that a sufficient gender-neutral reason was given to rebut a prima facie case of gender discrimination.  For both jurors, defense counsel told the trial court that he had them in his "maybe" category and that he felt like "there were some better jurors for [the defendant]."  Unlike with Jurors Numbers 2 and 11, for whom defense counsel offered quantifiable assertions for, defense counsel provided nothing for the trial court to assess with respect to Jurors Number 19 and 22.

¶20.    This Court has recognized that a striking attorney may follow his or her "intuition" in deciding whether to strike a particular juror so long as that judgment does not include the assumption – or intuitive judgment – that the juror would be partial to the other side because of the juror's gender or race.  ***Brewer v. State***, 725 So. 2d 106, 123 (Miss. 1998) (stating also that "[t]he establishment of a race neutral reason is not a difficult task") (internal quotation marks omitted) (quoting ***Stewart v. State***, 662 So. 2d 552, 558 (Miss. 1995)).

¶21.    In ***Brewer***, for example, this Court found that a prosecutor's "merely following his intuition or perception" with regard to "jurors who watched soap operas, and [a] juror who stated that she loved people" was sufficiently race-neutral to rebut a prima facie case of purposeful race discrimination.  ***Id.*** at 123.

¶22.    And in ***Hardison***, which Fields relies on in this case, defense counsel sought to strike a white prospective juror based on the juror's response during voir dire that he had served

7

on a jury in an armed-robbery case that, due to prosecutorial error, had not reached a verdict. *Hardison*, 94 So. 3d at 1097. Defense counsel told the trial court that the juror's response suggested to him that the juror "regretted not being able to reach a verdict, so he was more likely to convict." *Id.* The trial court found the reason insufficient and restored the prospective juror to the jury pool. *Id.* On appeal, this Court found that defense counsel had provided a race-neutral reason, which required the trial court to proceed to *Batson*'s third step. *Id.* at 1100.

¶23. In both *Brewer* and *Hardison*, counsel offered a reasonably specific explanation for wanting to strike the prospective juror(s). Here, defense counsel provided no specific explanation at all for striking Jurors Number 19 and 22.

¶24. Accepting, as we must, the trial court's ruling that a prima facie case of gender discrimination existed with respect to prospective Jurors Number 19 and 22, we find that defense counsel failed to rebut the showing with a gender-neutral explanation. Thus, the trial court did not err by seating Jurors Number 19 and 22.

## CONCLUSION

¶25. For these reasons, we affirm Fields's conviction.

¶26. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. MAXWELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**