633 So.2d 978 (1993)
Steve PUCKETT, Superintendent of Mississippi State Penitentiary, Ed Hargett, Deputy Superintendent of Treatment at Mississippi State Penitentiary, and Christopher Epps, Chief of Security at Mississippi State Penitentiary
v.
Frank STUCKEY, Jr.
No. 91-CA-0318.
Supreme Court of Mississippi.
December 9, 1993.
Rehearing Denied April 14, 1994.
Michael C. Moore, Atty. Gen., John L. Clay, Sp. Asst. Atty. Gen., Jackson, Leonard C. Vincent, Parchman, for appellants.
Frank Stuckey, pro se.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:
This is an appeal by State Respondents from an adverse decision rendered by the Circuit Court of Sunflower County in a prisoner's rights case.
On October 11, 1990, Frank Stuckey, Jr. (Stuckey), inmate of the Mississippi Department of Corrections, filed this action against Steven William Puckett, Superintendent of Mississippi State Penitentiary; Ed Hargett, Deputy Superintendent of Treatment at Mississippi State Penitentiary, and Christopher Epps, Chief of Security at Mississippi State Penitentiary. Stuckey alleged the parties, without just cause or reason, denied him visiting privileges by his wife, Phyllis.
The circuit court magistrate ordered a response to be filed to Stuckey's petition.
The State Respondents answered by filing a document entitled "Report to the Court" *979 which admitted that Phyllis' visiting privileges had been suspended because she received the proceeds of an altered money order in a case under investigation by the postal authorities. The Report further recited, "visiting is a privilege and not a right at this institution and ... the Mississippi Department of Corrections has penological interest and discretion in giving permission or preventing an ex-correctional officer or anyone who is under investigation by the postal authorities."[1]
The State respondents filed a supplemental report which alleged that the Mississippi Highway Patrol Criminal Investigation Division developed intelligence information that Phyllis was trafficking drugs, contraband, and money to Stuckey in the penitentiary. The report further alleged that Phyllis and Stuckey were involved in the U.S. Postal money order fraud scheme being investigated by the U.S. Postal authorities. The supplemental report admitted that "the Mississippi Department of Corrections has terminated the visiting rights of Mrs. Stuckey."
The cause was set for hearing before the circuit court magistrate.
On March 5, 1991, subsequent to a hearing, the magistrate rendered her "Findings and Recommendations" which state inter alia:
Mrs. Phyllis Stuckey, wife of petitioner Frank Stuckey, has been denied visiting privileges, for an indefinite period of time, based upon allegations that she received the proceeds of an altered money order.
Testimony adduced at the hearing established that Mrs. Stuckey voluntarily met with the postal authorities early in 1990. Said investigation by the United States Postal authorities was conducted in March or April of 1990.
A concurrent investigation by the Mississippi Highway Patrol Criminal Investigation Division has been concluded and no charges have been filed against Mrs. Stuckey.
The United States Postal authorities initiated an investigation of the alleged money order scheme over one year ago. Although the Sunflower County Grand Jury has met several times, there has been no action or criminal charges filed against Mrs. Stuckey.
It is the finding of the undersigned that the Mississippi Department of Corrections presented no valid basis for the suspension of visiting privileges.
It is therefore recommended that the visiting privileges of Mrs. Phyllis Stuckey be restored.
The following objections to the magistrate's findings were filed by the State respondents:
(1) Visitation is a privilege subject to the discretion of prison officials; and
(2) The magistrate erred as a matter of law by assuming jurisdiction of this matter, and ruling that Mississippi Department of Corrections had to present a valid basis for the suspension of visiting privileges.
The circuit court, Honorable Howard Q. Davis, Jr. presiding, after reviewing the file, approved and adopted the magistrate's findings and recommendations, and rendered an order restoring Stuckey's visitation privileges with his wife. The order states, inter alia:
The Department of Corrections is correct in its interpretation of the law as the fact "that visitation is a privilege subject to the discretion of prison officials." They are wrong, however, when they assume that this is an absolute and not subject to review by this Court. The issue is not the Department of Corrections' right to establish policy; it is whether the application of that policy violates the Due Process Clause of the 14th Amendment. See, Wolff v. McDonald (sic), 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
The Magistrate held a hearing on this matter and found in favor of Mr. Stuckey. There is no allegation by the Department of Corrections that the Magistrate erred as to the application of the Due Process Clause, only that she erred in "ruling that the Mississippi Department of Corrections had to present a valid basis for the suspension of visiting privilege." The Department *980 of Corrections is wrong; the Magistrate is right.
The State respondents appeal, presenting the following issues:
(1) Whether the trial court correctly ruled that a prisoner is entitled to due process of the law when his visiting privileges are restricted or terminated;
(2) Whether a prisoner has a constitutional right to visitation when incarcerated; and
(3) Whether a prisoner's constitutional right must yield to prison administrative rules and regulations when exercised in furtherance of legitimate penological objectives.
The circuit court's ruling and the issues presented on appeal by the State respondents miss the rationale of the magistrate's findings of fact and resulting conclusions. It is not necessary that we address the constitutional issues discussed in the appellate briefs for proper resolution of the controversy. While the circuit court erroneously hinged its decision on due process rights, we are not restricted to the court's rationale or its reasons for the result it reached. On appeal, we will affirm a decision of the circuit court where the right result is reached even though we may disagree with the reason for that result. Stewart v. Walls, 534 So.2d 1033, 1035 (Miss. 1988).
As admitted by appellee in his brief, this Court in Terrell v. State addressed the visitation rights of inmates:
Visitation rights of the inmates are accorded the discretion of prison officials and denial of such is not a constitutional issue. McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir.1975).
Terrell, 573 So.2d 730, 732 (Miss. 1991).
In McFadden v. State, 580 So.2d 1210, 1215-16 (Miss. 1991) reh'g denied (June 19, 1991), we considered and rejected McFadden's claim of a protected liberty interest in visitation rights and stated:
In Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), the United States Supreme Court held that Kentucky prison regulations did not give prisoners a liberty interest in being allowed visitation with certain people. Several persons were denied visitation with inmates because they had in some way been instrumental in bringing contraband into the facility. This action was taken by prison officials without a hearing.
First, the Court said that the right to visitation with a certain person is not protected by the Due Process Clause since the denial of such is "`well within the terms of confinement ordinarily contemplated by a prison sentence.'" Thompson, 490 U.S. at 461, 109 S.Ct. at 1909, 104 L.Ed.2d at 515 [quoting Hewitt v. Helms, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983)]. Secondly, the State had not created a liberty interest because "the regulations are not worded in such a way that an inmate could reasonably expect to enforce them against the prison officials." Id. [490 U.S.] at 465, 109 S.Ct. at 1911, 104 L.Ed.2d at 518. The Court said that the regulations did not contain mandatory language in that "they stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met." Id. at 464, 109 S.Ct. at 1910, 104 L.Ed.2d at 517.
The Fifth Circuit has indicated that a temporary suspension of an inmate's visitation privileges without a hearing does not violate the inmate's due process rights. To require such a hearing "would place the Due Process Clause `astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges.'" Jones v. Diamond, 594 F.2d 997, 1017 (5th Cir.1979) [quoting Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)].
The Fifth Circuit has also held that prisoners do not have a constitutional right to conjugal visits. See Davis v. Carlson, 837 F.2d 1318, 1319 (5th Cir. 1988), and McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir.1975). Instead, "visitation privileges are a matter subject to the discretion of prison officials." McCray, 509 F.2d at 1334. But, limitations must meet "legitimate penological objectives, such as rehabilitation *981 and the maintenance of security and order." Lynott v. Henderson, 610 F.2d 340, 342 (5th Cir.1980).
....
We believe the reason given by prison officials for denying McFadden visitation with his wife, that allowing visitation would place an undue administrative burden on the facility since transportation was unavailable, is within the visitation policies which allow prison officials to limit visitation as is "necessary to maintain order and security."
In Thorne v. Jones, 765 F.2d 1270 (5th Cir.1985) cert. denied, 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 313 (1986), the federal court held that inmates have no visitation rights with their parents or anyone else grounded in the First Amendment. In Thorne, the court stated:
The trial court cited no authority whatever for the proposition that Mrs. Thorne had an absolute right under the First Amendment to visit her sons, and we have found little or none. In Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the Supreme Court stated:
The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration.... Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside the penal institution.
433 U.S. at 125-26, 97 S.Ct. at 2537-38. This language is itself sufficient to refute the notion that incarcerated prisoners retain any absolute rights of physical association, moreover, we have held "that for convicted prisoners `visitation privileges are a matter subject to the discretion of prison officials.'" Jones v. Diamond, 636 F.2d [1364] at 1376-77, [(5th Cir.1981)] quoting McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir.), cert denied, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975). See also, Block v. Rutherford, 468 U.S. 576 [587] 104 S.Ct. 3227, 3233, 82 L.Ed.2d 438 (1984) ("There are many justifications for denying contact visits entirely"); White v. Keller, 438 F. Supp. 110, 114 (D.Md. 1977), aff'd, 588 F.2d 913 (4th Cir.1978).
765 F.2d at 1272-73.
The circuit court erroneously concluded the issue rested upon determination of whether application of the Mississippi Department of Corrections' visitation policy violated due process rights of Stuckey.
Wolff, 418 U.S. 539, 94 S.Ct. 2963 (cited by the Circuit Court as authority for Circuit Court decisions) is not authority for holding that suspension of a prisoner's visitation privileges necessarily implicates the due process clause of the Fourteenth Amendment to our Constitution.
In Wolff, the Supreme Court of the United States rejected any notion that inmates have an inherent constitutional right to good-time credits, but recognized that a state may nevertheless create a liberty interest protected by the due process clause through its enactment of certain statutes or regulatory measures. The Court held that Nebraska had not only provided a statutory right to good-time credits for inmates, but provided the instances of forfeiture. Under those circumstances the Court stated:
[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.
418 U.S. at 557, 94 S.Ct. at 2975, 41 L.Ed.2d at 951.
Unlike Wolff, there is no evidence or issue in this case of prisoner's rights created by legislative enactment.
*982 Inexplicably, the MDOC visitation policy was not made a part of the record in the circuit court. A purported copy is included in appellee's brief but may not be considered in the present posture of the case. We have stated on many occasions that each case must be decided by the facts shown in the record, not assertions in the brief. Facts asserted to exist must and ought to be definitely proved and placed before us by a record certified by law, otherwise, we cannot know them. Britt v. State, 520 So.2d 1377, 1379 (Miss. 1988).
Although prisoners do not enjoy an absolute constitutional right to unrestricted visitation, Lynott v. Henderson, 610 F.2d 340, 342 (5th Cir.1980), and their visitation privileges are subject to the discretion of prison officials, Jones v. Diamond, 636 F.2d 1364, 1376-77 (5th Cir.1981), restrictions on an inmate's visitation privileges should not be imposed arbitrarily or discriminatorily. Morgan v. De Robertis, 582 F. Supp. 271, 273 (N.D.Ill. 1984). See also Thomas v. Brierley, 481 F.2d 660 (3d Cir.1973).
Having said this, we direct our attention to the proper resolution of the true issues in this cause. The magistrate heard and considered the facts. She found that the reasons given by the correction officials for suspending visitation privileges by Stuckey with his wife did not exist and that "no valid basis for suspension was shown." These findings of fact adopted and approved by the circuit court judge may not be disturbed unless manifestly wrong or clearly erroneous. A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor. Kight v. Sheppard Building Supply, Inc., 537 So.2d 1355, 1358 (Miss. 1989). The magistrate's findings, adopted by the circuit court, are supported by credible evidence. The findings, in effect, support the conclusion that the correction officials, without a valid reason, arbitrarily suspended Stuckey's visitation privileges with his wife. While the prison officials have a wide range of discretion concerning the authorization and suspension of visitation privileges, they should not be permitted to act arbitrarily or discriminatorily. The very definition of the word "discretion" includes "the ability to make responsible decisions" and "the power of free decision of latitude of choice within certain legal bounds." Webster's Ninth New Collegiate Dictionary 362 (1984). It is not necessary that we decide the parameters of the legal limits of the discretion accorded prison authorities since their actions in this case were clearly outside appropriate bounds. In sum, the magistrate found MDOC officials abused their discretion. The findings are supported by credible evidence. The Circuit Court adopted and approved those findings. Under our limited scope of review, we have no authority to disturb them.
The judgment of the Circuit Court is affirmed, but for the reasons set forth in this opinion.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
NOTES
[1] Phyllis, wife of Stuckey, was an ex-corrections officer at the MDOC.