IRVING, J.,
dissenting:
¶ 21. The majority finds that the circuit court erred in granting summary judgment to Mt. Gillion Baptist Church after it was sued by the trustee of Michael Jeffer-ies’s bankruptcy estate for injuries sustained by Jefferies while he was using an allegedly defective ladder to install a security-alarm system in the church’s gymnasium.[1] The majority finds that the circuit court erred in relying upon premises-liability law and in concluding that Jefferies assumed the risk of using the allegedly defective ladder,[2] as the risk was inherent in Jefferies’s work as an installer of security-alarm systems.
¶ 22. I agree with the majority that the law of premises liability is inapplicable to our factual scenario and, therefore, cannot undergird the circuit court’s judgment. I also agree with the majority that the controlling authority is Oden Construction Co. v. McPhail, 228 So.2d 586 (Miss.1969). However, the majority fails to properly apply the principle announced in Oden to the facts of our case. Therefore, I dissent. I would affirm the judgment of the circuit court.
¶ 23. I quote, as does the majority, the principle announced in Oden:
One who supplies to another, directly or through a third person, a chattel to be used for the supplier’s business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied.
(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
(b) if he fails to exercise reasonable care to discover its dangerous condition or *1018 character, and to inform those whom he should expect to use it.
Id. at 588.
¶ 24. George Fondren, the deacon who provided the ladder, submitted an affidavit which stated in part:
Because the installer did not have a 20-foot-extension ladder to use in the gymnasium, I borrowed a ladder from a member of the church. When Mr. Gilliam [3] arrived at the church, I provided him the ladder I had borrowed. I examined it briefly and did not see anything wrong with it. Since I knew Mr. Jeffer-ies was more experienced than I was with ladders, I relied on him to let me know if the ladder was not suitable or was unsafe in any way.
¶ 25. Jefferies, by deposition, gave the following pertinent testimony:
Q. Okay. So, you see the ladder laying [sic] there and what did it look like?
A. It actually looked just like a ladder I had used before. It was about an 18-foot ladder, green, I believe, fiberglass ladder.
Q. Okay.
A. And I had one very similar to it a couple of years before back when I did satellite TV’s.
Q. And so before you used the ladder for the first time did you look at it? A. Of course, I had to look at it.
Q. Did you examine it to see if it would be suitable for the job?
A. I picked it up, looked at it. Everything looked fine to me. The guy [Fondren] even picked it up— helped me pick it up like, you know, I couldn’t — he didn’t know if I was able to do it by myself or not. But, you know, of course, I’ve done it before. He helped me pick it up off the floor and lean it up against the wall.
Okay. But I mean, you wouldn’t have climbed on that ladder unless you inspected it and made sure you thought it was safe, correct? &
Right. Everything seemed to be fine with the ladder.
You didn’t notice anything unusual about it? (S’
No. <d
Was it broken in any way? O’
No. <3
¶ 26. It seems quite clear to me that the undisputed facts show that the supplier in this case, the church acting through its deacon, exercised reasonable care to discover any dangerous condition that might have existed in the ladder. In fact, the supplier and user inspected the ladder together after the supplier had first inspected it. Neither saw anything wrong with the ladder. In my judgment, the majority errs in finding that Jefferies’s statement — that he did not notice the ladder was missing one of its rubber grips until after the fall — requires that this case be remanded for trial because the church did not refute the statement. The question is not whether the rubber grip was missing when the ladder was tendered to Jefferies, if indeed it was, but whether the church failed to use reasonable care to discover whether the grip was missing. It goes without saying that there can be no liability assessed against the church for failing to use reasonable care to make the ladder safe if, after reasonable inspection of the ladder, it discovered nothing that rendered it unsafe.
¶ 27. Since the church, acting by and through Fondren, used reasonable care to ensure that the ladder was safe for the *1019 intended use, I would affirm the judgment of the circuit court,[4] as I am unable to discern any negligence on the part of the church in furnishing the ladder to Jeffer-ies.

. The ladder was provided to Jefferies by a deacon of Mt. Gillion.

. Apparently, the circuit court also concluded that the risk of injury from using the ladder was inherent in Jefferies’s work as an installer of security-alarm systems.

. While Fondren stated Gilliam arrived at the church, it is clear that he meant Jefferies.

. "An appellate court may affirm a trial court if the correct result is reached, even if the trial court reached the result for the wrong reasons.” Mason v. S. Mortg. Co., 828 So.2d 735, 738 (¶ 15) (Miss.2002) (citing Puckett v. Stuckey, 633 So.2d 978, 980 (Miss. 1993)).