# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CP-01193-COA

**MERLIN HARDISON**                                                                   **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/21/2018 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MERLIN HARDISON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 04/27/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A Hinds County Circuit Court jury convicted Merlin Hardison of one count of armed robbery and two counts of aggravated assault on May 24, 2006.  On direct appeal, the Mississippi Supreme Court reversed Hardison's convictions and remanded for a new trial, finding the trial court "committed clear and reversible error by denying Hardison's right to a peremptory strike."  *Hardison v. State*, 94 So. 3d 1092, 1102 (¶37) (Miss. 2012).

¶2.     On remand, as part of a plea agreement, Hardison entered a guilty plea to one count of armed robbery and one count of aggravated assault on July 1, 2014; the remaining charge of aggravated assault was remanded to the files.  House Bill (H.B.) 585 went into effect as

law on the day of Hardison's plea; so the plea petition was amended to note the "[n]ew sentencing guidelines[,] which may allow for early release after serving 50% of time per H.B. 585 effective July, 2014." At the plea hearing, Hardison's attorney, Brent Southern, addressed the recent changes to the law and the amendment to the petition:

> BY MR. SOUTHERN: Your Honor, if I may just for a brief moment. You may have noticed it by now, but the plea petition that we were using, the form this morning, there is a cross through on, I think, the second page -
>
> BY THE COURT: I'm looking at it.
>
> BY MR. SOUTHERN: - where it talks about House Bill 585, which becomes law effective today, July 1, 2014, which eliminates armed robbery as a specific crime whereby the defendant would not be eligible for early release. Under House Bill 585, he *will be eligible for early release* provided he meets certain other criteria during the time of his incarceration.
>
> I had Mr. Hardison initial the cross[-]through, so I went through it with him and he understands it.
>
> BY THE COURT: I note the change in the petition.
>
> . . . .
>
> BY [THE STATE]: Your Honor, as far as any amendment to the plea petition as to [H.B.] 585, I am not - I'll say 585, it's my understanding, does set forth parameters which he *may be eligible under 585 for early release*. I'm not aware of that. I don't -- I don't deal with [Mississippi Department of Corrections (MDOC)] once they're out of my hands, which is why I had no objection to the amendment to the plea petition.
>
> . . . .
>
> BY THE COURT: . . . I'll note the - this writing in the petition to plead guilty. And I share the prosecutor's and your own attorney's lack of ability to interpret House Bill 585, but I believe it accurately represents what the bill stands for. But that's above my pay grade. Somebody else at the MDOC is going to have to deal with that as far as whether or not to apply those early release dates.

2

(Emphasis added). The trial court thereby sentenced Hardison to serve two concurrent sentences in the custody of the MDOC—thirty years for the armed-robbery conviction and twenty years for the aggravated-assault conviction—with twenty-three years to be served and seven years suspended.

¶3. Once in custody, Hardison claims he was informed that he was not eligible for early release; so Hardison filed a motion for post-conviction relief (PCR) on November 28, 2016, requesting that the trial court either allow him to withdraw his guilty pleas or enforce the conditions of his plea agreement (i.e., provide him with eligibility for early release). He also requested an evidentiary hearing.

¶4. To support his claim, Hardison cited Mississippi Code Annotated section 47-7-3.2(1) (Supp. 2014), enacted by H.B. 585, which provides:

> Notwithstanding Sections 47-5-138, 47-5-139, 47-5-138.1 or 47-5-142, no person convicted of a criminal offense on or after July 1, 2014, *shall be released by the department until he or she has served no less than fifty percent (50%) of a sentence for a crime of violence pursuant to Section 97-3-2* or twenty-five percent (25%) of any other sentence imposed by the court.

(Emphasis added). Without holding an evidentiary hearing, the trial court denied Hardison's PCR motion on September 21, 2018, finding:

> Hardison pled guilty to these crimes on July 1, 2014. This was also the effective date for H.B. 585, codified as Mississippi Code Annotated § 47-7-3.2. This statute gave violent offenders the chance for parole after serving fifty percent of their sentence. Hardison claims [the] new law was his main incentive for pleading guilty and asserts he was misled by his attorney to accept the agreement. The Mississippi Legislature enacted another law in 2016, Mississippi Code Annotated § 47-7-3, that made any person convicted of a violent crime on or after July 1, 2014, ineligible for parole. The two laws were contradictory; however, the Attorney General clarified the issue holding the latest statute, Mississippi Code Annotated § 47-7-3, as the binding

3

authority.[1]

> Accordingly, since Hardison was sentenced on or after July 1, 2014 and was convicted of violent offenses, he is not eligible for parole or early release. At the time of his guilty plea, his attorney advised him of the correct law and is not responsible for a legislative change two years after sentencing.

Hardison appeals the trial court's ruling, arguing that (1) his plea was involuntary because he relied on his attorney's representation that he would be eligible for parole after serving fifty percent of his sentence, and (2) the court erred in its ex post facto[2] application of the 2016 amendment to his sentence. Hardison, therefore, requests that this Court reverse and render his sentence, as he has already served over fifty percent of that sentence.

¶5. The State asserts that "Hardison's claim that the trial court enacted or enforced an ex post facto law through its order is without merit" and that Hardison is not parole eligible. The State does concede, however, that Hardison was "entitled to an evidentiary hearing on the issue of whether he voluntarily, knowingly, and intelligently entered his guilty plea," as counsel's advice "regarding his eligibility for early release was erroneous." Therefore, the

---

[1] The trial court is apparently referencing Mississippi Attorney General Opinion, 2017-00409, 2018 WL 1401723, *Dale* at *1 (Feb. 16, 2018), in which the Attorney General's office was asked to clarify whether the crimes of armed robbery and second-degree murder would qualify for parole eligibility after fifty-percent of the sentence was served, in light of section 47-7-3(1)(g)(i), "which was enacted in 2016" and prohibits parole release of any person convicted of a crime of violence. The Attorney General concluded that "when statutory provisions conflict, the provisions of the latest statute prevails." *Id*. However, as we will address in more detail, section 47-7-3(1)(g)(i) was enacted in 2014, not 2016.

[2] The Ex Post Facto clauses of the United States and Mississippi Constitutions (U.S. Const. art. I, § 10, cl. 1; Miss. Const. art. 3, § 16) prohibit the creation of "a new offense or chang[ing] the punishment, to the detriment of the accused, after the commission of the crime." *Ross v. Epps*, 922 So. 2d 847, 849 (¶5) (Miss. Ct. App. 2006) (quoting *Knowles v. State*, 708 So. 2d 549, 553 (¶6) (Miss. 1998)).

State requests that this Court remand for further proceedings merely to allow Hardison to present any evidence that he relied on his attorney's misrepresentation "when entering his guilty plea."

¶6. At the outset, we find the trial court erroneously stated that Mississippi Code Annotated section 47-7-3(1)(g)(i) was "enacted" in 2016.[3] Enacted by H.B. 585, section 47-7-3(1)(g)(i) went into effect on July 1, 2014, and provides, "No person who, on or after July 1, 2014, is convicted of a crime of violence pursuant to Section 97-3-2, a sex crime or an offense that specifically prohibits parole release, shall be eligible for parole." For this reason, we cannot find merit to Hardison's argument that the court applied an ex post facto law.

¶7. We also find that Hardison is not parole eligible because he was convicted of two crimes of violence under Mississippi Code Annotated section 97-3-2(1) (Rev. 2014). Nevertheless, the State has conceded that defense counsel's advice regarding parole eligibility was "erroneous" and that "this case should be remanded for an evidentiary hearing" based on his claims. Accordingly, we reverse and remand to the trial court for an evidentiary hearing on the voluntariness of Hardison's guilty plea.

**STANDARD OF REVIEW**

¶8. "This Court employs the clearly-erroneous standard of review when reviewing a trial court's summary dismissal of a PCR motion." *Smith v. State*, 291 So. 3d 1, 5 (¶8) (Miss. Ct.

---

[3] As the State correctly notes, the only amendment to section 47-7-3 in 2016 was to re-write paragraph (1)(f), which "had no bearing on Hardison's parole eligibility." The State, however, does not address the Attorney General's *Dale* opinion.

App. 2019) (quoting *Lofton v. State*, 233 So. 3d 907, 908 (¶4) (Miss. Ct. App. 2017)). We will affirm a court's "summary dismissal of a defendant's PCR motion 'if he fails to demonstrate a claim procedurally alive substantially showing the denial of a state or federal right.'" *Id.* (quoting *Moore v. State*, 248 So. 3d 845, 848 (¶7) (Miss. Ct. App. 2017)). Questions of law, however, are reviewed de novo. *Id.* (citing *Lofton*, 233 So. 3d at 908 (¶9)).

**DISCUSSION**

¶9.     As in his PCR motion, Hardison contends that section 47-7-3.2 grants him eligibility for early release from custody. Hardison argues that he entered his guilty plea believing that "he would be eligible for parole after serving [fifty] percent (50%) of his sentence pursuant to [H.B.] 585 effective July 1, 2014." Yet when he re-entered MDOC's custody, his new time sheet "reflected that he must serve the entire [twenty-three-year] sentence rather than receiving a [fifty] percent reduction to be release on parole or early release after serving 11 ½ years as promised in the agreement."

¶10.     The State asserts that notwithstanding the language of section 47-3-3.2, "Hardison was not eligible for parole at the time he pleaded guilty because both of his crimes were classified as crimes of violence pursuant to [section] 97-3-2." Section 97-3-2(1), also enacted in 2014, enumerated specific crimes of violence, including armed robbery and aggravated assault.[4]  *See* Miss. Code Ann. § 97-3-2(1). While we have found no cases addressing if or how section 47-3-3.2 affects an inmate's parole eligibility, the supreme court did address in *Fogleman v. State*, 283 So. 3d 685, 691 (¶22) (Miss. 2019), the interplay

---

[4] Neither party disputes that Hardison was convicted of crimes of violence as defined under section 97-3-2(1).

6

between section 47-7-3(1)(g)(i) and section 97-3-2(2).  Specifically, the supreme court was

asked to consider if the petitioner was entitled to parole or early release under subsection (2)

of section 97-3-2.[5]  Pertinent to our analysis is the supreme court's conclusion in *Fogleman*:

> Instead of just declaring that Section 43-7-3(1)(g)(i)'s parole-elimination
> provision trumps, our law requires us, if possible, to harmonize these two
> parole-related provisions so as not to render the last sentence of Section
> 97-3-2(2) meaningless.  *We find Section 43-7-3(1)(g)(i) does apply to the per
> se crimes of violence listed in subsection (1) of Section 97-3-2 because Section
> 97-3-2(1) is silent about parole eligibility.*  But Section 43-7-3(1)(g)(I) does
> not apply to the trial court's discretionary designation of a "crime of violence"
> under subsection (2) of Section 97-3-2.  Rather, subsection (2)'s specific
> parole-and-early-release-eligibility provision controls.

*Id.* at 691-92 (¶23) (emphasis added).  In *Bowman v. State*, 283 So. 3d 154, 169 (¶¶57, 59)

(Miss. 2019), the supreme court revisited its *Fogleman* holding, finding that because the

defendant was convicted of a crime of violence, he would "have to serve the entirety of his

ten-year sentence."  However, because the trial judge in *Bowman* "did not have the benefit

of [the supreme court's] decision in *Fogleman* and "was under the opposite impression that

[s]ection 97-3-2(2)'s [fifty] percent parole eligibility applied to all of [s]ection 97-3-2," the

---

[5] Subsection (2) provides:

> (2) In any felony offense with a maximum sentence of no less than five (5)
> years, upon conviction, the judge may find and place in the sentencing order,
> on the record in open court, that the offense, while not listed in subsection (1)
> of this section, shall be classified as a crime of violence if the facts show that
> the defendant used physical force, or made a credible attempt or threat of
> physical force against another person as part of the criminal act.  No person
> convicted of a crime of violence listed in this section *is eligible for parole or
> for early release from the custody of the Department of Corrections until the
> person has served at least fifty percent (50%) of the sentence imposed by the
> court.*

(Emphasis added).

7

supreme court reversed and remanded for resentencing, "allow[ing] the judge to fashion what he believes to be an appropriate sentence[.]" *Id*. at 169-70 (¶¶59-60).

¶11. Our Court has since followed the *Fogleman* precedent. In *Wilson v. State*, 295 So. 3d 566, 567 (¶¶2, 6-9) (Miss. Ct. App. 2020), we held that a petitioner was "not entitled to parole under Mississippi law" because his 2016 convictions of armed robbery and kidnapping fell "within the statutorily defined crimes of violence . . . in section 97-3-2(1)." (Citing *Fogleman*, 283 So. 3d at 692 (¶23); Miss. Code Ann. § 47-7-3(1)(g)(i)); *see also Gava-Hudson v. State*, No. 2020-CA-00246-COA, 2021 WL 248152, at *2 (¶10) (Miss. Ct. App. Jan. 26, 2021) (recognizing *Fogleman* "specifically held that '[s]ection 47-7-3(1)(g)(i) does apply to the per se crimes of violence in subsection (1) of [s]ection 97-3-2,' meaning [the defendant] must serve her time without eligibility for parole"); *Freelon v. State*, 285 So. 3d 701, 701-03 (¶¶2, 9) (Miss. Ct. App. 2019) (observing that petitioner, who was "convicted of two statutorily enumerated violent crimes" in 2016, was "not eligible for parole" under section 47-7-3(1)(g)(i) and the supreme court's holding in *Fogleman*). Therefore, in accordance with this precedent, Hardison is not parole eligible, as he was convicted of two enumerated crimes of violence.

¶12. Returning to the immediate issue before us—whether sections 47-7-3.2 and 47-7-3(1)(g)(i) are in conflict—we note that the supreme court has held, "This state's policy in regard to conflicting statutes is to construe them in harmony with each other so as to give force and effect to each, as far as reasonably possible." *Metts v. State Dep't of Pub. Welfare*, 430 So. 2d 401, 405 (Miss. 1983). Section 47-7-3(1)(g)(i) is clear—no one convicted on or

after July 1, 2014, of a crime of violence under section 97-3-2 "shall be eligible for parole." Hardison argues that section 47-7-3.2, on the other hand, gives "violent offenders the chance for parole after serving [fifty] percent of their sentence." However, we believe that section 47-7-3.2 only applies to the same crimes identified in *Fogleman* as being parole eligible—those which the trial judge designates as violent crimes under section 97-3-2(2). Because Hardison was convicted of crimes of violence under section 97-3-2(1), section 47-3-3.2 is inapplicable.[6]

¶13.    As to whether Hardison was entitled to an evidentiary hearing in order to establish that his plea was involuntary, Hardison was required to show that he was "affirmatively misinformed regarding the possibility of parole and ple[d] guilty in reliance on the misinformation." *Moore v. State*, 248 So. 3d 845, 852 (¶17) (Miss. Ct. App. 2017) (emphasis omitted).    Here, the State has conceded that the advice provided by defense counsel "regarding his eligibility for early release was erroneous," with counsel stating at the plea hearing that "[u]nder [H.B.] 585, [Hardison] will be eligible for early release provided he meets certain other criteria during the time of his incarceration." *See Manuel v. State*, 304 So. 3d 713, 717-18 (¶¶11-15) (Miss. Ct. App. 2020) (reversing and remanding for an evidentiary hearing because defense counsel misinformed defendant regarding his parole eligibility and earned/trusty time).    However, given the discussion at the plea hearing as to

---

[6] In his separate opinion, Presiding Judge Wilson does not dispute that both section 47-7-3(1)(g)(i) and section 47-7-3.2 apply to parole eligibility for violent offenders. However, he concludes that "[t]here is no conflict between the two statutes." We disagree. We find the better course is to acknowledge the conflict, as the Attorney General did in *Dale*, *supra* n.1, follow the supreme court's reasoning in *Fogleman*, and harmonize the two statutes.

the "lack of ability to interpret House Bill 585," we cannot ascertain that the State's concession of "erroneous" advice of counsel equates to affirmative misinformation as required by *Moore*. Therefore, we find the issue is more appropriate for the trial court to consider on remand. *See Tiller v. State*, 440 So. 2d 1001, 1006 (Miss. 1983) (recognizing the supreme court was "without power to adjudicate the merits" of a PCR motion and remanding to the trial court for an evidentiary hearing). We reverse and remand for the trial court to conduct an evidentiary hearing on the voluntariness of Hardison's guilty plea.

¶14. **REVERSED AND REMANDED.**

**GREENLEE, WESTBROOKS AND McDONALD, JJ., CONCUR. McCARTY AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY McCARTY AND EMFINGER, JJ. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., AND SMITH, J.; McCARTY, J., JOINS IN PART.**

**WILSON, P.J., CONCURRING IN PART AND IN RESULT:**

¶15. I concur in part and in the result. I concur with the plurality opinion that after an evidentiary hearing, the circuit judge should determine whether Hardison was misinformed, and if so, whether he actually relied on any such misinformation in entering his guilty plea. I write separately because I respectfully disagree with the plurality opinion that Mississippi Code Annotated section 47-7-3.2 (Rev. 2015) does not apply to per se crimes of violence listed in Mississippi Code Annotated section 97-3-2(1) (Rev. 2020).

> **I.     Under current law and precedent of this Court, Hardison is ineligible for parole or any other form of early release.**

¶16. Before addressing Hardison's claim, it is helpful to clarify exactly what types of early

10

release may be available to a prisoner and why Hardison is ineligible for each under current law and precedents of this Court.

¶17. Hardison pled guilty to the crime of armed robbery. By statute, he is clearly ineligible for parole. Miss. Code Ann. § 47-7-3(1)(g)(i) (Rev. 2015); Miss. Code Ann. § 97-3-2(1)(j). In addition, because Hardison is ineligible for parole, he is also ineligible for a reduction of his sentence by earning trusty time or regular earned time (i.e., "good time"). *See* Miss. Code Ann. § 47-5-138.1(2)(d) (Rev. 2015) ("An offender in trusty status shall not be eligible for a reduction of sentence under this section if: . . . (d) The offender has not served the mandatory time required for parole eligibility, as prescribed under Section 47-7-3, for a conviction of robbery . . . through the display of a deadly weapon . . . ."); Miss. Code Ann. § 47-5-139(1)(e) (Rev. 2015) ("An inmate shall not be eligible for the earned time allowance if: . . . (e) The inmate has not served the mandatory time required for parole eligibility for a conviction of robbery . . . with a deadly weapon."); *Wells v. State*, 936 So. 2d 479, 480 (¶5) (Miss. Ct. App. 2006) (holding that because "a person convicted of armed robbery can never be eligible for parole, it follows that he may not accrue trusty or earned time pursuant to sections 47-5-138.1(2)(d) and 47-5-139(1)(e), respectively").

¶18. Based on decisions of this Court, Hardison is also ineligible for "meritorious earned time" or "MET" under Mississippi Code Annotated section 47-5-142 (Rev. 2015). Meritorious earned time "should not be confused with" regular earned time or "good time" addressed in the previous paragraph. *Williams v. Puckett*, 624 So. 2d 496, 498 n.2 (Miss. 1993). Under section 47-5-142, "any offender shall be eligible . . . to receive meritorious

11

earned time as distinguished from earned time for good conduct and performance." Miss. Code Ann. § 47-5-142(1). The Department of Corrections "may" award meritorious earned time for the "successful completion of educational or instructional programs" or "satisfactory participation in work projects" or "any special incentive program." *Id.* § 47-5-142(2). Because the statute provides that the Department "may" award meritorious earned time, it follows that "correctional officials are vested with discretionary power to award time under certain conditions and, therefore, inmates are not entitled to it." *Ross v. State*, 584 So. 2d 777, 779 (Miss. 1991); *see also Green v. Sparkman*, 829 So. 2d 1290, 1291 (¶2) (Miss. Ct. App. 2002) ("The awarding of meritorious earned time is within the discretion of the MDOC officials."). In addition, and of particular relevance to Hardison, "[t]his Court has repeatedly held that, notwithstanding the broad language in section 47-5-142, eligibility for meritorious earned time is controlled by section 47-5-139." *Mason v. Miss. Dep't of Corr.*, 248 So. 3d 840, 841 (¶3) (Miss. Ct. App. 2017), *cert. denied*, 247 So. 3d 1265 (Miss. 2018); *accord Roberson v. Fisher*, 303 So. 3d 788, 792 (¶18) (Miss. Ct. App. 2020), *cert. denied*, 303 So. 3d 420 (Miss. 2020); *Givens v. Miss. Dep't of Corr.*, 291 So. 3d 375, 376 (¶4) (Miss. Ct. App. 2019). In other words, this Court has held that an inmate who, like Hardison, is ineligible for regular earned time (good time) pursuant to section 47-5-139 is likewise ineligible for meritorious earned time under section 47-5-142.[7]

---

[7] *Mason* cited five prior decisions of this Court for this proposition. *Mason*, 248 So. 3d at 841 (¶3). However, this holding does not follow directly from the plain language of either section 47-5-139, which applies only to regular earned time (good time), or section 47-5-142, which does not limit eligibility for meritorious earned time. Moreover, the five cases that *Mason* cited provided little or no analysis of the issue, and some of them involved habitual offenders, who would have been ineligible for *any* sentence reduction for that

¶19. In summary, the relevant statutes make clear that Hardison is ineligible for parole, trusty time, and earned time (good time), and decisions of this Court hold that Hardison is also statutorily ineligible for meritorious earned time. Thus, under current law, Hardison is ineligible for all forms of early release.

II. **Section 47-7-3.2(1) applies to the per se crimes of violence listed in section 97-3-2(1).**

¶20. Mississippi Code Annotated section 47-7-3.2(1) provides,

> Notwithstanding Sections 47-5-138, 47-5-139, 47-5-138.1 or 47-5-142, no person convicted of a criminal offense on or after July 1, 2014, shall be released by the department until he or she has served no less than fifty percent (50%) of a sentence for a crime of violence pursuant to Section 97-3-2 or twenty-five percent (25%) of any other sentence imposed by the court.

Miss. Code Ann. § 47-7-3.2(1). Mississippi Code Annotated section 47-7-3(1)(g)(i) provides that "[n]o person who, on or after July 1, 2014, is convicted of a crime of violence pursuant to Section 97-3-2 . . . shall be eligible for parole." The plurality opinion states that to avoid a "conflict" between these two statutes, we must interpret section 47-7-3.2(1) as inapplicable to the per se crimes of violence listed in section 97-3-2(1). *Ante* at ¶12 & n.6. I respectfully disagree that there is any conflict because these two statutes address distinct (though related) issues. For that reason, I also respectfully disagree with the plurality opinion's conclusion that section 47-7-3.2 does not apply to the per se crimes of violence.

¶21. Section 47-7-3(1)(g)(i) *only* relates to parole. It provides that an inmate serving a sentence for a crime of violence is not eligible for parole, period. However, as discussed

_____

reason alone. *See* Miss. Code Ann. § 99-19-81 (Rev. 2020) (providing that a habitual offender's sentence "shall not be reduced").

above, parole is not the only form of early release. An inmate may also earn an early release by earning good time, trusty time, or meritorious earned time. That is where section 47-7-3.2(1) comes into play. That statute recognizes that inmates—even some inmates convicted of crimes of violence—may earn various forms of early release. Indeed, it specifically cross-references the relevant statutes governing good time, trusty time, and meritorious earned time. Miss. Code Ann. § 47-7-3.2(1).[8] The purpose of section 47-7-3.2(1) is to ensure that an inmate convicted of a crime of violence serves at least fifty percent of his sentence no matter how much good time, trusty time, or meritorious earned time he accumulates. Thus, it addresses a different issue than section 47-7-3(1)(g)(i), which is *only* a parole statute. There is no conflict between the two statutes.[9] Both statutes can and do apply to persons convicted of per se crimes of violence under section 97-3-2(1).

### III. Hardison is entitled to an evidentiary hearing on his claim.

¶22. Hardison's pro se PCR motion did not include a sworn statement of facts, as required by the Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-9(1)(d)

---

[8] It is important to remember that Hardison is ineligible for good time, trusty time, and meritorious earned time only because he is serving a sentence for armed robbery—not just because he was convicted of some "crime of violence." Inmates convicted of some crimes of violence remain eligible for good time, trusty time, and meritorious earned release.

[9] In finding a "conflict," the plurality opinion relies on an Attorney General's opinion. *Ante* at n.6. "The Attorney General's opinion is not controlling law." *In re V.L.W.*, 751 So. 2d 1033, 1034 (¶6) (Miss. 1999). It "is merely persuasive authority" to the extent it actually is persuasive. *Miss. State & Sch. Emps.' Life & Health Plan v. KCC Inc.*, 108 So. 3d 932, 938 (¶15) (Miss. 2013) (rejecting the conclusion of an Attorney General's opinion). This Attorney General's opinion is particularly unpersuasive given that—as the plurality opinion acknowledges elsewhere, *ante* at n.1—the Attorney General was fundamentally mistaken about the dates on, and order in which, these two statutes were enacted and amended.

14

(Rev. 2020), or any supporting affidavits. However, the circuit court did not return the motion to Hardison for failure to comply with the statute, *see id.* § 99-39-9(4), and the State has not raised the issue on appeal. Indeed, the State concedes that we should reverse and remand the case for an evidentiary hearing on Hardison's claim. Under the circumstances, it is appropriate for this Court to address Hardison's claim. *Ford v. State*, 911 So. 2d 1007, 1010-11 (¶¶5-6) (Miss. Ct. App. 2005) (addressing the merits of a PCR motion despite the absence of a sworn statement of facts where the circuit court had addressed the motion on its merits rather than returning it to the petitioner).

¶23. Nonetheless, the record on appeal includes little evidence to either support or contradict Hardison's claim. We have only Hardison's plea petition, the allegations of his pro se motion, and the transcript of his plea hearing, which was added to the record by order of this Court. By themselves, the plea petition and the transcript are inadequate to prove that Hardison was affirmatively misinformed regarding his eligibility for early release under House Bill 585. Therefore, I agree with the dissent that the present record does not establish that Hardison was affirmatively misinformed regarding his eligibility for early release. I also agree with the dissent that if Hardison was clearly advised and warned that the relevant early-release provisions of House Bill 585 were ambiguous and had not yet been interpreted by the courts, and if Hardison pled guilty with full knowledge of that uncertainty, then his plea may have been knowing, intelligent, and voluntary for that reason.

¶24. However, Hardison alleges that he was misinformed, and the remainder of the record is at least ambiguous with respect to that issue. For example, if Hardison was told that his

15

eligibility for early release would be determined by "[s]omebody else at MDOC," as the circuit judge put it during his plea hearing,[10] then he may have been affirmatively misinformed because it would appear that he is ineligible for early release pursuant to the relevant statutes. Certainly, he will not be eligible for early release after serving only fifty percent of his sentence. As such, that issue was not up to "[s]ombeody else at MDOC." Given that Hardison's allegations are not disproven by the remainder of the limited record before us, an evidentiary hearing is appropriate and warranted. *See Manuel v. State*, 304 So. 3d 713, 718 (¶15) (Miss. Ct. App. 2020).

¶25. Furthermore, the circuit judge did not make any factual findings regarding the voluntariness of Hardison's plea. Rather, the circuit judge denied Hardison's PCR motion because the judge erroneously believed that House Bill 585 (2014) "gave violent offenders the chance for parole after serving fifty percent of their sentence." The judge also mistakenly believed that the "Legislature enacted another law in 2016" that eliminated Hardison's eligibility for parole. As the plurality opinion explains, the judge was mistaken in both respects—both of the relevant statutes were enacted in 2014, and Hardison never was eligible for parole. Thus, the circuit judge did not make a factual finding that we can review or

---

[10] At Hardison's plea hearing, the judge found that Hardison plea was knowing, intelligent, and voluntary before anyone mentioned House Bill 585 or early release. The comments of defense counsel, the prosecutor, and the court that are quoted in the plurality opinion (*ante* at ¶2) all occurred after the court had already accepted Hardison's plea. Therefore, Hardison's decision to plead guilty was not made in reliance on these comments. *See Fairley v. State*, 834 So. 2d 704, 707 (¶9) (Miss. 2003) (stating that a party attacking a guilty plea on the ground that he was misinformed regarding his eligibility for parole must show that "in pleading guilty, he, in fact, relied upon the erroneous information concerning parole and sentencing"). Thus, these comments are relevant only to the extent that Hardison can show that they are consistent with what his lawyer told him prior to his plea.

affirm. He denied Hardison's PCR motion based on mistakes regarding the relevant law.

¶26.    In summary, I concur with the plurality opinion and the State that we should reverse and remand the case for an evidentiary hearing on Hardison's claim. Based on the evidence presented at that hearing, the circuit judge should determine whether Hardison was misinformed regarding his eligibility for early release and, if so, whether Hardison actually relied on any such misinformation when entering his guilty plea.

    **McCARTY AND EMFINGER, JJ., JOIN THIS OPINION.**

    **LAWRENCE, J., DISSENTING:**

¶27.    Because I believe the plea transcript and the plea petition belie the allegations set forth in Hardison's PCR motion I would affirm the circuit court's denial of Hardison's PCR motion. Accordingly, I respectfully dissent.

¶28.    Hardison pled guilty to the crime of armed robbery on July 1, 2014. On that day, he signed a plea petition under oath. The plea petition contained the following typed language: "I understand that if I am sentenced for an armed robbery or attempted armed robbery, by displaying a deadly weapon, I will not be eligible for parole." That language was later scratched out and replaced with the following handwritten language: "[n]ew sentencing guidelines which **may** allow for early release after serving 50% of time per H.B. 585 effective July, 2014." (Emphasis added). Hardison initialed the written change, indicating he knew exactly what was in the form before the scratch out and what was handwritten in the form after the scratch out. At the plea hearing, the defense attorney informed the circuit judge of the change on the plea petition. The circuit judge noted the change and stated:

17

> I share the prosecutor's and your own attorney's lack of ability to interpret House Bill 585, but I believe it accurately represents what the bill stands for. But that's above my pay grade. Somebody else at MDOC is going to have to deal with that as far as **whether or not to apply** those early release dates.

(Emphasis added). In essence, the circuit judge informed Hardison that MDOC was the ultimate decider on early release. He pled guilty anyway. He therefore assumed the risk knowing that his parole was not guaranteed, and he took the deal offered by the State, admitted his guilt, and waived his rights.

¶29. "A plea is involuntary if a defendant is **affirmatively misinformed** regarding the possibility of parole and pleads guilty in reliance on that information." *Ulmer v. State*, 292 So. 3d 611, 614 (¶9) (Miss. Ct. App. 2020) (emphasis added). In its order denying Hardison's PCR motion, the circuit court found, "At the time of his guilty plea, [Hardison's] attorney advised him of the correct law and is not responsible for a legislative change two years after sentencing." Therefore, the record indicates that at the time of the plea, Hardison knew that the existing law prevented early release on armed robbery and that a new law "may" allow for some type of early release, but it was not known to what effect. Any other interpretation would mean Hardison did not know what the use of the word "may" means. It is clear "may" means something could happen or could not happen. He pled guilty knowing that he "may" get early release consideration after serving fifty percent of his sentence or he "may" not be eligible at all if the existing law proved still in force.

¶30. On August 29, 2019, the Mississippi Supreme Court resolved a similar issue in *Fogleman v. State*, 283 So. 3d 685 (Miss. 2019). There, the supreme court clearly pronounced that the crimes listed in section 97-3-2(1) are not affected by the fifty-percent

18

parole-eligibility rule in section 97-3-2(2). *Id*. at 691-92 (¶23). Rather, section 97-3-2(2) only applies to the crimes defined by the judge as a crime of violence. If the crime of violence crime is specifically listed in 97-3-2(1) then section 47-7-3(1)(g)(i) would prohibit parole. Therefore, since armed robbery is specifically listed as a crime of violence in section 97-3-2(1), section 47-7-3(1)(g)(i) would prohibit early release. Are we now to set aside every plea for armed robbery between July 1, 2014 (the inception of H.B. 585) and August 29, 2019, because a defendant was hoping H.B. 585 "may" change the armed robbery release law and it did not? If a defendant knows the two possible outcomes and enters a constitutionally valid plea accepted by the circuit court judge, then "hoping" for a different result is not a sufficient basis to set aside a plea. On the issue of parole or not, the defendant knew as much as anyone else in the courtroom and agreed to plead guilty anyway. That is hardly a legally sufficient basis to set aside an otherwise valid guilty plea.

¶31. A defendant attacking his guilty plea through a PCR motion is now standard fare in the criminal justice process. Circuit court judges accept pleas of guilty every day of every week in every court all over this State. Those judges make on-the-record findings that defendants knowingly, intelligently, and voluntarily enter into those pleas. Yet, years later, a defendant who admitted his guilt can attack that plea by simply claiming he did not understand that the word "may" could mean something could go either way. As a result, conducting a plea hearing has become like wading a field planted with legal land mines. Courts are second guessed and imposed with impossible standards of predicting the future even though a defendant was told that the court cannot predict the future and divinely know

19

how the supreme court or MDOC may decide an issue not yet decided.

¶32.    To be clear, I understand fully the gravity of a guilty plea and the fact that a defendant is waiving his constitutional rights.  It is crucial that the circuit court judge engage in a detailed colloquy with a defendant to ensure that each guilty plea is entered into knowingly, intelligently, and voluntarily to safeguard those constitutional rights.  Guilty pleas are supposed to end a criminal prosecution.  Instead, now it is just another step in the never ending walk through that legal minefield that plays out over and over again over years and years.  As a result, there is little finality and much uncertainty in the criminal justice system. The plurality opinion in this case adds to the lack of finality and uncertainty.  The plurality opinion sets asides an otherwise valid plea to armed robbery because the defendant was not told what the supreme court would do five years later or that a judge, at the time of the plea hearing,  could not divine which side of early release armed robbery may land on as a result of a new law.[11]  Granted the circuit court may have been in error on exactly what law applied and when the Legislature made changes to different laws.  Still, "[i]t is the customary practice, in the name of judicial economy, for an appellate court to affirm the trial court if the right result is reached even though for the wrong reason." *Jackson v. State*, 811 So. 2d 340, 342 (¶16) (Miss. Ct. App. 2001) (citing *Puckett v. Stuckey*, 633 So. 2d 978, 980 (Miss. 1993)). The record supports the conclusion that the use of the word "may" in the plea petition demonstrates that Hardison was sufficiently informed that he "may" or "may" not be eligible

---

[11] The plea hearing occurred on July 1, 2014.  The circuit court entered an order denying Hardison's PCR motion on September 21, 2018.  The Supreme Court decided *Fogleman v. State*, 283 So. 3d 685 (Miss. 2019), on August 29, 2019.

for early release depending on how the new law would be interpreted and that he decided to plead guilty anyway with that knowledge. I would not place a circuit court judge in error for not being able to predict and relay to a defendant what the future holds. The record on appeal supports the circuit court's determination that defense counsel did not give Hardison erroneous advice but rather that Hardison knew as much as everyone else at the time—he may or may not be eligible for early release. He chose to plead guilty anyway. Because I would affirm the circuit court's denial of Hardison's PCR motion, I dissent.

**CARLTON, P.J., AND SMITH, J., JOIN THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**